THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HENRY W. DISHAROON, Defendant-Appellant.

(No. 55272;

First District—March 30, 1972.

Daniel A. Costigan, and Adamowski, Neweym & Riley, both of Chicago, (Francis X. Riley, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and James Sternik, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

This case involves a charge of theft and a dispute over the ownership of the property allegedly stolen.

Henry Disharoon was accused of knowingly exerting unauthorized control over a flat-bed trailer that had been stolen from the Illinois Bell Telephone Company, or of obtaining control of the trailer under circumstances which would reasonably induce him to believe it was stolen. He was tried by a jury, found guilty and placed on probation. His defense in the trial court and his contention in this court is that the trailer was his property.

In February 1969, a yellow, 4,000 pound, Dynaweld D-Trailer, owned and operated by the Telephone Company disappeared from a job-site in Steger, Illinois. On April 5, 1969, Steger's chief of police, Charles Tieri, while driving in a neighboring town, saw a black-painted trailer which resembled the one reported stolen. He kept the trailer under observation and saw Disharoon and another man enter a truck to which the trailer was attached and drive away. As Tieri trailed them, he noticed that the black paint on the trailer did not completely cover its yellow undercoat. He stopped the truck and spoke to Disharoon, the driver. Disharoon said the trailer was his and produced a license application which corresponded with the license on the trailer. He was asked to drive to the police station.

The Telephone Company was notified and two employees, Donald

Garber, a line foreman, and John Buch, a line-man, came to the station. Both men had used the missing trailer in their work and they separately identified the one at the station as the property of their company.

As Disharoon's trial, Garber, Buch and a third employee told how they knew the trailer was the one that had been stolen: the trailer was a Dynaweld D; the company's trailer was yellow and the original yellow was showing through the black paint; the ramps on the trailer were 27" wide, the normal widths of the ramps on a Dynaweld trailer are 24" and the company had Dynaweld make 27" ramps for its special use; the ramps had several galvanized metal bolts which had been installed by the company in place of those which came with the trailer; the front of the trailer was held down by bent eye-bolts, these were put in by the company in place of the two bolts and nuts that had been used for this purpose; the holes in the trailer's deteriorated floor boards were identical with those in the company's trailer; the company had added new links in the chains used to tie on the tractor and shiny new links were on the chains of the recovered trailer; part of the apparatus for the brakes, lights, and stop and turn signals, called a Warner brake receptacle, was on the company's trailer and on the one found in Disharoon's possession. The recovered trailer differed from the company's in these respects: the company trailer had a serial number—14924—this number had been ground off and was no longer legible; the tongue had been turned over and rewelded to fit a smaller truck; the Warner brake receptacle was not in use; commercial lights had been added and a battery other than the company's was being used.

The manager of Dynaweld, Inc., testified for the State. He said the trailer and ramps were manufactured by his company and were the type made for the Illinois Bell Telephone Company and two other utilities. The trailer in dispute was specifically made for the Telephone Company and a serial number was stamped on it. The floor of the trailer and its brake receptacle were installed by Dynaweld and some of its underparts still had the original coat of yellow paint.

Disharoon, an electrician employed by an electrical company, testified that the trailer was his and had been in his possession for more than a year. His side occupation was repairing wrecked autos and he used the trailer to transport them. He stated that he had assembled the trailer himself from used parts purchased from a man named John Harris whom he did not peviously know and whose address he did not know. When he paid Harris he asked for a receipt but did not get one. He turned the tongue upside down so that it would fit his truck, welded some brackets on the safety chain, placed bolts on the ramps and a bent eye-bolt in front, rewired the taillights and painted the yellow parts black. He did

not change the wood floor or attempt to repair its holes. The Warner receptacle was on the tongue of the trailer when he bought and he continued to use it. In 1968 he applied to the Secretary of State for a title. The application stated that the homemade trailer weighed 1,500 pounds. The title was issued in April 1968 and a serial number—T-060674—was assigned and a license number was issued. He neither looked for nor observed a serial number on any of the parts he bought from Harris and he stamped the assigned serial number on the front right side of the frame. The trailer was tested for safety on February 8, 1969, and the safety sticker was attached to the trailer's frame. He used the stub of the safety sticker on February 12, 1969, when he applied for and received a 1969 license, for a 1968 flat-bed trailer, serial number T-060674. He denied owning a different trailer in 1968 and having obtained serial number T-060674 for the prior trailer.

The defendant contends that his documentary evidence conclusively established his ownership and there was, therefore, a reasonable doubt of his guilt. He states that he does not argue the sufficiency or weight of the evidence and does not question the credibility of the State's witnesses. The issue which the jury had to decide, however, was essentially one of credibility and the weight to be given to the several items of proof.

■ ■ Trailers, being classified with motor vehicles, are subject to the registration and certificate of title provisions of the Illinois Vehicle Law. (Ill. Rev. Stat. 1967, ch. 95½, par. 3—402.) A certificate of title to a vehicle is not conclusive evidence of ownership of the vehicle. (*American States Ins. Co. v. White* (1950), 341 Ill.App. 422, 94 N.E.2d 95.) Although a *prima facie* presumption of ownership arises from a certificate of title, the presumption may be rebutted by other competent evidence. (*Country Mutual Ins. Co. v. Murray* (1968), 97 Ill.App.2d 61, 239 N.E.2d 498; *Government Employees Ins. Co. v. Dennis* (1965), 65 Ill.App.2d 365, 212 N.E.2d 759.) Thus the documents introduced by Disharoon were not conclusive as a matter of law that he was the owner of the trailer. The decision whether he or the Telephone Company had proven ownership was for the jury.

A reasonable inference could be drawn from the total evidence that the certificate of title, serial number and license obtained by the defendant in 1968 were for a different trailer, and that in 1969 he succeeded in transferring the 1968 indicia of ownership to the stolen trailer by representing to the Secretary of State that it was the same homemade trailer. The figure he gave for the weight of the trailer in his 1968 application, 1,500 pounds, as contrasted to the proven weight of the trailer found in his possession in 1969, 4,020 pounds, supported the inference.

In determining that the defendant had knowingly exercised unauthorized control over property of the company, the jury could have given great credence to the employees' detailed enumeration of the trailer's many distinctive features with which they were familiar and which distinguished it from any other; and the jury could have discounted the defendant's story that he acquired the parts for the trailer without a receipt or bill of sale from a stranger whose whereabouts he did not know. While there was no direct evidence that he stole the trailer, there was substantial evidence from which it could be concluded that, if he did not steal it, he obtained control of it under circumstances which should have alerted him to the fact that it was stolen property.

■■ The resolution of conflicting testimony, the credibility of witnesses and the weight to be accorded individual testimony, is within the province of the jury. Its decision will not be disturbed unless it is based on unsatisfactory evidence which raises a reasonable doubt of the defendant's guilt. *People v. Uselding* (1969), 107 Ill.App.2d 305, 247 N.E.2d 35; *People v. Burks* (1969), 105 Ill.App.2d 112, 245 N.E.2d 120. The evidence does not raise a reasonable doubt and the jury's verdict and the defendant's conviction are affirmed.

Judgment affirmed.

McGLOON, P. J., and McNAMARA, J., concur.