George D. SCOTT et al.,
Plaintiffs-Appellants,

v.

EVERSOLE MORTUARY, a partnership, et al., Defendants-Appellees.

No. 73-2765.

United States Court of Appeals,
Ninth Circuit.

July 8, 1975.

---

James F. King, Jr. (argued), Ukiah, Cal., for plaintiffs-appellants.

Stephen C. Tausz (argued), San Francisco, Cal., for defendants-appellees.

OPINION

Before ELY and WALLACE, Circuit Judges, and JAMESON,* District Judge.

WALLACE, Circuit Judge:

This action concerns the alleged refusal of a private mortuary in Mendocino County, California, to provide funeral services to persons of American Indian descent. Because Mendocino County does not have its own facilities, it had contracted with Eversole Mortuary and one other mortuary for morgue services. As called upon to do so, Eversole Mortuary was to transport corpses to the mortuary, embalm them, prepare them for autopsy and provide facilities for autopsies by the county coroner.

Scott and the two Bruners (appellants) are relatives of an Indian family which died in an automobile accident in Mendocino County. Pursuant to its contract

* Honorable William J. Jameson, United States District Judge, District of Montana, sitting by designation.

with the county, Eversole Mortuary collected and embalmed the bodies; the autopsies were performed on its premises. After the autopsies, appellants requested funeral services from Eversole Mortuary. The mortuary refused, allegedly because appellants and the decedents were Indians. This action followed against Eversole Mortuary and its owners and operators (collectively referred to as Eversole).

Appellants sought recovery on three counts: discrimination in making contracts and in selling personal property in violation of 42 U.S.C. §§ 1981, 1982 (count one); intentional infliction of emotional distress (count two); and deprivation of civil rights under color of state law in violation of 42 U.S.C. § 1983 (count three). The district court dismissed the complaint without leave to amend, reasoning that the federal civil rights claims in counts one and three did not allege action under color of state law. The court also apparently concluded that jurisdiction should not be maintained independently over the state law claim in count two. This appeal followed and we reverse the dismissal of counts one and two and affirm the dismissal of count three.

Eversole has questioned whether an appeal lies from an order that dismisses a complaint but not the underlying action. Ordinarily it does not, but this case falls within an exception to the rule:

> An order dismissing a complaint but not dismissing the action is not final and appealable under 28 U.S.C. § 1291

(1964), unless there are special circumstances which make it clear that a court determined that the action could not be saved by any amendment of the complaint which the plaintiff could reasonably be expected to make.

*Jackson v. Nelson,* 405 F.2d 872, 873 (9th Cir. 1968) (citation omitted). *Accord, Lanning v. Serwold,* 474 F.2d 716, 717 n.1 (9th Cir. 1973); *Ruby v. Secretary of the United States Navy,* 365 F.2d 385, 387 (9th Cir. 1966) (en banc), *cert. denied,* 386 U.S. 1011, 87 S.Ct. 1358, 18 L.Ed.2d 442 (1967). Because the district judge did not allow leave to amend, he must have determined that the action would not be saved by amendment.[1]

Nearly all will agree, as indeed we do with our Brother Ely, that refusal to provide business services to singled-out members of the public on the basis of racial bias cannot be morally justified. Involved in this case is a race which was not only at one time in the majority but once the sole possessors of this land. But if what is alleged in the complaint is true and such discrimination has occurred, recourse in the courts must be pursuant to law. Our task then is to see whether the law provides assistance to appellants in redress of their alleged wrongs.

Appellants contend that none of the counts of their complaint should have been dismissed. As regards count one, they argue that 42 U.S.C. §§ 1981, 1982 prohibit racial discrimination in making contracts[2] and in selling person-

---

1. The remarks of the district court confirm this conclusion:

    THE COURT: I said I was not arguing with you, Counsel. I was stating the Court's position. If there are to be limitations upon [funeral services], they must come from some more clearly applicable statutes than these, and I see nothing in the intendment of either the Civil Rights Act or the Constitution to require these services to be indiscriminately offered.

    It is plain that the complaint on its face had other deficiencies, but in my view curing those deficiencies would not cure the basic problem that is claiming a denial of a right

that is not afforded in the fashion the plaintiffs contend for. Accordingly, I will grant the motion to dismiss.

2. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. 42 U.S.C. § 1981.

al property[3] even in the absence of action under color of state law. We agree. The Supreme Court has already held that section 1982 prohibits both public and private racial discrimination in the sale of property. *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). The Court relied on the legislative history of section 1 of the Civil Rights Act of 1866, the statute originally enacting the provisions now codified in section 1982. *Id.* at 420–37, 88 S.Ct. 2186. But since section 1 of the Civil Rights Act of 1866 also originally enacted the provisions now codified in section 1981,[4] that section must likewise be construed to prohibit private racial discrimination in making contracts. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 458–460, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1975); *Bowers v. Campbell,* 505 F.2d 1155, 1157–58 (9th Cir. 1974).

Appellants have appropriately pleaded claims arising under section 1981 (attempted contract for funeral services) and section 1982 (attempted purchase of caskets) and we, therefore, reverse the dismissal of count one.

However, that count one was erroneously dismissed does not require reversal of the dismissal of count three. There a different section is involved. Only deprivation of civil rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory" is prohibited by 42 U.S.C. § 1983. Appellants argue that this requirement has been met in the present case because California extensively regulates funeral services and because Eversole has contracted with Mendocino County to furnish morgue services and facilities. They do not contend, and their complaint does not allege, that Eversole's decision to discriminate was influenced by any public official. Whether Eversole acted under color of state law, therefore, depends upon the degree of state involvement in its alleged discriminatory activities.

> [W]here the impetus for the discrimination is private, the State must have "significantly involved itself with invidious discriminations," *Reitman v. Mulkey,* 387 U.S. 369, 380, 87 S.Ct. 1627, 1634, 18 L.Ed.2d 830 (1967), in order for the discriminatory action to fall within the ambit of the constitutional prohibition.

*Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 173, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972). Although *Moose Lodge* dealt expressly with the state action requirement of the Fourteenth Amendment,[5] the requirement of action under color of state law in section 1983 is substantially identical. *United States v. Price,* 383 U.S. 787, 794 n.7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); *Ouzts v. Maryland Nat'l Ins. Co.,* 505 F.2d 547, 550 (9th Cir. 1974) (en banc). The question before us, then, is whether the state "significantly involved itself" in the alleged discrimination against appellants.[6]

---

**3.**    All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

42 U.S.C. § 1982.

**4.**  The Civil Rights Act of 1866, § 1, ch. 31, § 1, 14 Stat. 27 (1866), was re-enacted by The Enforcement Act of 1870, § 18, ch. 114, § 18, 16 Stat. 140, 144, and then codified in Rev.Stats. §§ 1977, 1978 (1874), and recodified in its present form in 42 U.S.C. §§ 1981, 1982. *See Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 422 n.28, 436–37, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

**5.**  Because *Moose Lodge* concerned an action under 42 U.S.C. § 1983, the issue of action

under color of state law was before the Court. *See* 407 U.S. at 165, 92 S.Ct. 1965. The opinion, however, only mentions the state action requirement of the Fourteenth Amendment. *See id.* at 171–79, 92 S.Ct. 1965.

**6.**  Several decisions of this circuit have applied similar tests to determine whether action of a private party is under color of state law. *Ascherman v. Presbyterian Hosp. of Pac. Medical Center, Inc.,* 507 F.2d 1103, 1104 (9th Cir. 1974); *Chrisman v. Sisters of St. Joseph of Peace,* 506 F.2d 308, 312 (9th Cir. 1974); *Ouzts v. Maryland Nat'l Ins. Co.,* 505 F.2d 547, 557 (9th Cir. 1974) (en banc); *Adams v. Southern Cal. First Nat'l Bank,* 492 F.2d 324, 329 (9th Cir. 1973); *Martin v. Pacific Northwest Bell Tel. Co.,* 441 F.2d 1116, 1118 (9th Cir.), *cert. denied,* 404 U.S. 873, 92 S.Ct.

**1114**

Several factors usually relevant to a finding of significant state involvement are not present in this case. Eversole did not conspire with state officials or otherwise obtain their assistance in discriminating against appellants. *E.g., Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Griffin v. Maryland,* 378 U.S. 130, 135–37, 84 S.Ct. 1770, 12 L.Ed.2d 754 (1964). Nor did it act, or purport to act, as an agent of the state in refusing to deal with appellants. *E. g., Griffin v. Maryland, supra,* 378 U.S. at 135, 84 S.Ct. 1770. Its alleged discrimination is not compelled, approved, encouraged or authorized by California law, *e. g., Reitman v. Mulkey,* 387 U.S. 369, 373–81, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967), but instead is specifically prohibited, Cal.Civ. Code §§ 51, 52. Finally, appellants do not claim that providing funeral services is a public function traditionally performed by government agencies. *E. g., Evans v. Newton,* 382 U.S. 296, 298–302, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966). *See Lloyd Corp. v. Tanner,* 407 U.S. 551, 556–70, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972).

The Supreme Court has found significant state involvement in only one case in which the preceding factors were absent. In *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), the Court held that a state agency had entered into a sufficiently interdependent relationship with a segregated restaurant to satisfy the state action requirement of the Fourteenth Amendment. The restaurant was operated on public property, in a building constructed and maintained with public funds. It benefited indirectly both from the state agency's exemption from property taxes and from the presence in the building of parking for its customers. *Id.* at 718–20, 723–24, 81 S.Ct. 856. The agency, for its part, received revenue from the lease necessary to maintain its financial self-sufficiency and increased patronage of its parking facilities. *Id.* at 718–19, 723, 724, 81 S.Ct. 856.

■ Appellants argue that the contract between Eversole and Mendocino County establishes a similar interdependent relationship. The mutual benefits

89, 30 L.Ed.2d 117 (1971); *see Geneva Towers Tenants Organ. v. Federated Mortgage Investors, Inc.,* 504 F.2d 483, 487 (9th Cir. 1974); *Sykes v. California (Dep't of Motor Vehicles),* 497 F.2d 197, 200 n.2, 202 (9th Cir. 1974). These cases do not concern allegations of racial discrimination. Several opinions, both in this circuit and elsewhere, have suggested that state action may be found more easily in cases of racial discrimination than elsewhere. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 371–374, 95 S.Ct. 449, 464–465, 42 L.Ed.2d 477 (1974) (Marshall, J., dissenting); *Adams, supra,* 492 F.2d at 333 & nn.22, 23, 334–35 (dictum); *Ascherman, supra,* 507 F.2d at 1105 (Duniway, J., concurring); *Fletcher v. Rhode Island Hospital Trust Nat'l Bank,* 496 F.2d 927, 931 (1st Cir. 1974) (dictum); *Grafton v. Brooklyn Law School,* 478 F.2d 1137, 1142 (2d Cir. 1973) (dictum). If these statements are valid, more state action is required to qualify under 42 U.S.C. § 1983 in, for instance, a procedural due process case than in one involving racial discrimination. Hence state involvement that may be insufficient in a procedural due process case may be sufficient in a racial discrimination case. Accordingly, we do not rely upon our prior decisions finding an absence of state action for purposes other than racial discrimination to support our holding today that Eversole did not engage in state action.

However, in one case, *Geneva Towers Tenants Organ. v. Federated Mortgage Investors, Inc.,* 504 F.2d 483 (9th Cir. 1974), we did find sufficient governmental involvement to support a due process claim. Because all state involvement sufficient for due process is also sufficient for racial discrimination, *Geneva Towers* might control the disposition of this case. That decision, however, is distinguishable. *Geneva Towers* held that an increase in rent in a low and moderate income housing project financed by the federal government was governmental action within the meaning of the Fifth Amendment. *Geneva Towers Tenants Organ v. Federated Mortgage Investors, Inc., supra,* 504 F.2d at 487. The private investors in the housing project benefited from government financing, below-market interest rates and tax advantages. In return, they were subjected to detailed monitoring and regulation to insure compliance with the statutory program of providing moderately-priced housing. *Id.* By contrast, Eversole provides services to the county as an independent contractor, not as an investor in a government subsidized and regulated venture. See discussion of *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), in text *infra.*

they cite are profit and referral of customers to the mortuary and, on the other side, avoidance by the county of the expense of operating its own morgue. We do not find these benefits sufficient. Most contracts, whether public or private, confer benefits upon the contracting parties. The interdependence found in *Burton* was more extensive. Because the financial self-sufficiency of the state agency depended upon the profitability of the segregated restaurant, the state agency became a joint venturer in the latter's affairs. *Moose Lodge, supra,* 407 U.S. at 177, 92 S.Ct. 1965; *see Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 357, 95 S.Ct. 449, 457, 42 L.Ed.2d 477 (1974). Furthermore, Eversole does not lease public property or benefit indirectly from an exemption from property taxes. Although Eversole's contract with the county may increase its private patronage, like the restaurant's lease of property near public parking facilities in *Burton,* Eversole neither appears to be a joint enterprise conducted by public and private interests nor is it one as a matter of economic fact. *See Geneva Towers Tenants Organization v. Federated Mortgage Investors,* 504 F.2d 483, 487–488 (9th Cir. 1974).

Further, the acts complained of did not directly occur as a result of the contract between the county and Eversole. Eversole performed its contractual obligations with respect to the decedents without regard to race. There is no allegation that the morgue services were refused or substantially modified, whether due to racial bias or otherwise. Appellants' claim is based upon Eversole's failure to provide funeral services *subsequent* to the completion of morgue services. These, to us, appear to be separate services and that separation is significant. Had the decedents been placed in a county-owned morgue and Eversole approached as alleged here, there would be no difference in the type of service declined. Though Eversole was in a better position to be chosen for funeral services because of the contract, that alone does not transform its actions into state action. *Moose Lodge* held a stronger causal connection to be insufficient. There the issuance of a liquor license was found not to involve the state significantly in private discrimination in serving liquor under that license. 407 U.S. at 175–77, 92 S.Ct. 1965.[7]

Appellants next contend that state regulations are sufficient to overcome the state action hurdle. However, the extensive regulation of funeral services by California law also does not significantly involve the state in the alleged discrimination. California does not discriminate racially in its regulation of funeral services. *See* Cal.Health & Safety Code §§ 7100–17; Cal.Bus. & Prof.Code §§ 7600–7742; 16 Cal.Admin. Code §§ 1200–74. Nondiscriminatory regulation does not transform the activities of a private party into state action. *Moose Lodge, supra,* 407 U.S. at 175–77, 92 S.Ct. 1965; *see Jackson v. Metropolitan Edison Co., supra,* 419 U.S. at 347–355, 357, 95 S.Ct. at 452–455, 457; *Ouzts v. Maryland Nat'l Ins. Co.,* 505 F.2d 547,

7. We have described the degree of causal connection sufficient for state action in *Ouzts v. Maryland Nat'l Ins. Co.,* 505 F.2d 547 (9th Cir. 1974) (en banc). After citing the Supreme Court cases that had found state action, we said:

> Although the nature of state action found in each of these cases differs with the facts of the case, they all share a common thread. In each, the Supreme Court found that there was some state involvement which directly or indirectly *promoted* the challenged conduct. Similarly, where the Court, could find *no* affirmative causal link between state legislation or policy and the challenged conduct, it declined to find the state action necessary to invoke the fourteenth amendment. *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 176–177, 92 S.Ct. 1965, 32 L.Ed.2d 627, (1972).

*Id.* at 553 (emphasis in original). We also noted that the state did not "foster" the type of misconduct that resulted. *Id.* at 554. Although *Ouzts* is not completely dispositive of the present case, *see* note 6 *supra,* the contract here between the county and Eversole did not in itself either "promote" or "foster" racial discrimination.

**1116**

550 (9th Cir. 1974) (en banc). Likewise, the combination of state regulation with the economic benefit of a restricted state franchise has been held not to involve the state significantly in private discrimination. *Moose Lodge, supra,* 407 U.S. at 175–77, 92 S.Ct. 1965; *see Jackson v. Metropolitan Edison Co., supra,* 419 U.S. at 351–355, 95 S.Ct. at 454–455. Hence the state regulation of Eversole, even in combination with the benefits from its contract with the county, does not amount to significant state involvement.

■ Appellants seek to distinguish *Moose Lodge,* however, because the discriminating organization in that case was a private club not open to the public, while Eversole is a business establishment dealing with the public at large. *See Moose Lodge, supra,* 407 U.S. at 175, 92 S.Ct. 1965. We cannot accept this distinction. The fact that a private business holds itself open to the public cannot be determinative of the degree of state involvement in its activities. Indeed, the relevance of this fact is slight. Most service and retail businesses are open to the public, yet the government is not thought to be involved in their operation, let alone significantly. *See Central Hardware Co. v. NLRB,* 407 U.S. 539, 546–47, 92 S.Ct. 2238, 33 L.Ed.2d 122 (1972). Similarly, the fact that a business serves the public cannot transform private action with otherwise insignificant state involvement into action under color of state law. The concept of state action cannot be extended so far into private economic activity. *Moose Lodge* is not to the contrary. It relies upon the closed character of the discriminating club to distinguish it not from eating places open to the public but only from the joint public-private venture found in *Burton. See Moose Lodge, su-*

*pra,* 407 U.S. at 173–75, 92 S.Ct. 1965. As we have already discussed, *Burton* is distinguishable from the present case on other grounds. We hold that count three does not state a claim under 42 U.S.C. § 1983.

■ The last issue presented by count three is whether, upon remand, appellants should be allowed leave to amend. They expressly requested to do so.[8] Even where amendment is not a matter of right, leave to amend "shall be freely given when justice so requires." Fed.R. Civ.P. 15(a). We can conceive of facts that would render the alleged discrimination of Eversole state action and we can discern from the record no reason why leave to amend should be denied. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Developers Small Business Inv. Corp. v. Hoeckle,* 395 F.2d 80, 83 (9th Cir. 1968); *Breier v. Northern Cal. Bowling Proprietors' Ass'n,* 316 F.2d 787, 789–91 (9th Cir. 1963) (dictum); *Alexander v. Pacific Maritime Ass'n,* 314 F.2d 690, 694–95 (9th Cir. 1963), *cert. denied,* 379 U.S. 882, 85 S.Ct. 150, 13 L.Ed.2d 88 (1964); 3 J. Moore, Federal Practice ¶ 15.10, at 957 (2d ed. 1974). Upon remand, appellants should be allowed leave to amend. We therefore reverse the district court's dismissal of count three insofar as it denies leave to amend.

■ The remaining issue raised by this appeal is whether the district court properly dismissed appellants' claim in count two for intentional infliction of emotional distress. We need not decide whether the district court properly refused to take pendent jurisdiction. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Appellants alleged diversity of citizenship in an amendment to the com-

---

8. Although appellants' written request for leave to amend was not contained in a properly captioned motion paper, Fed.R.Civ.P. 7(b)(1); N.D.Cal.R. 10(b), we need not decide whether appellants' right to amend their complaint after the successful motion to dismiss survived the defective motion. *See Nolen v.*

*Fitzharris,* 450 F.2d 958 (9th Cir. 1971); *Loux v. Rhay,* 375 F.2d 55, 57 (9th Cir. 1967); *Breier v. Northern Cal. Bowling Proprietors' Ass'n,* 316 F.2d 787, 789 (9th Cir. 1963); *see generally* 3 J. Moore, Federal Practice ¶ 15.10, at 959 (2d ed. 1974).

plaint filed as a matter of right. Fed.R. Civ.P. 15(a). This amendment was effective to invoke the district court's diversity jurisdiction. 28 U.S.C. § 1332(a)(1). The district court thus erred in dismissing count two.

The dismissal of counts one and two is reversed and remanded. The dismissal of count three is affirmed, but the denial of leave to amend is reversed.

Affirmed in part; reversed and remanded in part.

ELY, Circuit Judge (concurring in part, dissenting in part):

I concur in that portion of the majority opinion which overturns the District Court's dismissal of two claims raised by the appellants, i. e., the claim based on 42 U.S.C. §§ 1981, 1982, and the claim alleging the intentional infliction of emotional distress. I also agree that, upon remand, the appellants should be allowed to amend their claim under 42 U.S.C. § 1983.

On the other hand, I would hold that the original complaint, without any further amendment, was sufficient to state a claim under 42 U.S.C. § 1983. As I read the majority opinion, my Brothers affirm the District Court's dismissal of this claim upon the reasoning that an institution and its officers, paid by the state, were not, when they committed the illegal outrage in question, necessarily acting under the "color of state law" within the meaning of the statute. This, I submit, involves a process of logical surgery that is not even deft—the bisecting of the offending institution into two parts. The majority appears to reason that when the corporate appellee officially seized the Indian bodies under the authority conferred by the state, embalmed the remains, and furnished the facilities for autopsy, all in its official capacity as the agent of the state's Coroner, it acted under the color of state law.

But thereupon, say my Brothers, its official capacity terminated, and hence, when it declined the request of the bereaved survivors for funeral services and the purchase of caskets for their beloved, the corporate appellee had suddenly been transformed into a mere private person, insulated from liability under 42 U.S.C. § 1983. Thus, a humane and benevolent congressional act, designed to enable the Federal Courts to protect the victims of invidious discrimination perpetrated under the auspices of state law, is seriously diluted, if not thoroughly undercut.[1]

I have hitherto expressed my sense of deep personal resentment and shame over our Nation's past mistreatment of our Indians, mistreatment and abuse constituting some of the blackest pages in all the catalogue of human history. *See Agua Caliente Band of Mission Indians v. County of Riverside,* 442 F.2d 1184 (9th Cir. 1971) (dissenting opinion), *cert. denied,* 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972).

According to the complaint, the appellees refused to conduct funeral services for the deceased Indians in its "Caucasian" mortuary solely and only because of the racial derivation of the deceased. If this is true, the appellees' motive was evil beyond description, inspired by nothing more than their belief that their mortuary would in some way be contaminated if they performed funeral services for the lifeless bodies of three human beings, albeit of the Indian race. In my judgment, this deputy Coroner's indefensible, abhorrent conduct not only subjects it to liability under § 1983, but also it constitutes a flagrant infringement of rights guaranteed by the Thirteenth Amendment, adopted, according to the Supreme Court, for the purpose of abolishing all "badges and incidents of slavery in the United States." *Civil Rights Cases,* 109 U.S. 3, 20, 3 S.Ct. 18, 28, 27 L.Ed. 835 (1883). *See also, Griffin v.*

---

1. To me, it seems anomalous that while old Congressional legislation clearly discriminating against Indians remains extant (*see, e. g.,* 18 U.S.C. § 1553, allowing the death penalty for an Indian who rapes a white woman, but only "imprisonment" for an Indian who commits rape upon a female Indian; *cf. United States v. Cleveland,* 503 F.2d 1067 (9th Cir. 1974)), an Act purporting to confer benefits upon victims of discrimination is here, as to Indians, subverted by the majority opinion.

*Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

Having generally, although inadequately, set forth my general mortification, I pass to a colder and more temperate analysis of the legal authorities, an analysis which, hopefully, will reinforce my instinctive conclusion that my Brothers have fallen into grievous error in their resolution of the one issue that so intensively provokes my concern and disagreement.

The "under color of law" element of section 1983 is regarded as the equivalent of the state action requirement of the Fourteenth Amendment. *United States v. Price,* 383 U.S. 787, 794–95 n.7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). The issue is simply whether the District Court erred in dismissing the complaint without leave to amend, upon the apparent rationale that the complaint's third claim did not sufficiently allege that the appellees' challenged action was taken under the color of state law. The somewhat complex nature of the state action concept and the widely disparate results in the cases that have dealt with this issue indicate that the determination as to the presence of state action must turn upon a careful and detailed inquiry into the unique factual circumstances of each case. "Only by shifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be accorded its true significance." *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961).

My review of the specific facts and circumstances that the appellants have alleged has convinced me that, if the allegations are true, the activities of the appellees were not so purely private as to fall outside the state action concept of the Fourteenth Amendment. The appellants sought to show by the deposition of defendant Edward A. Eversole that

there was significant state involvement by virtue of an oral agreement between the Mendocino County Coroner and the Eversole Mortuary for the provision of morgue facilities and related services. The majority reasons that a mortuary licensed by the state and subject to extensive governmental regulation,[2] acting pursuant to a contract with the County Coroner in exchange for compensation, can remove the bodies of American Indians from the scene of a tragic accident to the mortuary, embalm them, allow a Coroner's autopsy to take place on its premises, and then suddenly switch roles and refuse to provide further mortuary services on grounds evidencing blatant racial discrimination. If the allegations of the appellants' complaint are true, it is clear that the bodies were taken to the mortuary without the consent of the Indians' relatives, and that the appellants would never have been exposed to the appellees' morally indefensible conduct for the fact that, pursuant to a contractual relationship with the state and at the direction of the County Coroner, the bodies of their relatives were legally required to be taken to the Eversole mortuary. On these facts, I cannot believe that the cases cited by the majority conclusively demonstrate that the State has not "significantly involved itself with invidious discriminations." *Reitman v. Mulkey,* 387 U.S. 369, 380, 87 S.Ct. 1627, 1634, 18 L.Ed.2d 830 (1967).

The majority places primary reliance upon an asserted separation of services (*i. e.,* that Eversole failed "to provide funeral services *subsequent* to the completion of morgue services."). When faced with this type of "hybrid" fact pattern, our court has directed that the following test is to be applied: " 'When the violation is the joint product of the exercise of a State power and a non-State power then the test under the Fourteenth Amendment and § 1983 is whether the state or its officials played a "significant" role in the result.' " *Green v. Dumke,* 480 F.2d 624, 629 (9th

---

**2.** *See* Cal.Health & Safety Code §§ 7100, 7103, 7105, 7055, 7300, 7301–2, 7303, 7355 (West 1974); Cal.Business & Professions Code §§ 7606, 7615–17, 7622, 7625, 7641, 7718.5 (West 1974).

Cir. 1973), quoting *Kletschka v. Driver,* 411 F.2d 436, 449 (2d Cir. 1969). It should here be emphasized that, whenever racial discrimination is involved, the scope of state action has been accorded a somewhat broader range. A lesser showing is required in such cases to establish state action than in cases imposing a more rigorous standard for other claims. *See Jackson v. Statler Foundation,* 496 F.2d 623, 628–29 (2d Cir. 1974); *Lefcourt v. Legal Aid Society,* 445 F.2d 1150, 1155 n.6 (2d Cir. 1971). When the totality of the factors are viewed together, the appellees' performing a governmental function at the direction of the County Coroner and taking action pursuant to a mutually beneficial contract with the state under an extensive system of state regulation, I cannot agree that the state or its officials did not "play a significant role in the result."

The majority would distinguish *Burton, supra,* on grounds that the interdependence found in *Burton* was "more extensive." I submit that the present controversy *does* involve an interdependent or symbiotic relationship between the state and a private entity just as extensive as in *Burton.* Under the agreement here, the mortuary conferred a direct benefit upon the County. In operation, as the County's morgue, it performed a significant and necessary public function. In exchange, the morgue received direct compensation and an enormous stimulus to its private patronage. At the direction of the County, the body of every decedent within the County was taken to the Eversole mortuary. Because the Indian bodies here were not in a county-owned morgue, the bereaved appellants were led by the state directly to the source of the discrimination, for the mutual benefit of both the County and the appellees. These basic facts, without more, should establish that the state, in

the words of our court, did "play a significant role in the result." (*Green, supra,* at 629.)

The majority relies upon *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 175–77, 92 S.Ct. 1965, 1973, 32 L.Ed.2d 627 (1971), wherein the Court held that the "pervasive" nature of regulation of private clubs by the State of Pennsylvania did not alone make the state "in any realistic sense a partner or even a joint venturer in the club's enterprise." But in the present case there is much, much more than mere state regulation, standing alone. *Moose Lodge* emphasized that Pennsylvania did not benefit from the lodge as Delaware had benefited from the restaurant in *Burton,* and that the lodge was a "private club," whereas the *Burton* restaurant was open to all of the general public except black people. In our present case, unlike *Moose Lodge,* but like *Burton,* there was an interdependent relationship between the state and the private entity. The private entity was open to the public and indeed was, under the requirements of a contract, performing a public function. While *Moose Lodge* might control a case where the only nexus between state and private conduct is a scheme of state regulation, it is not dispositive where significant additional contacts are present. Similarly, *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), may control when the only factors are heavy state regulation and a partial monopoly, but it is not conclusive when a symbiotic state-private relationship is also thoroughly demonstrated.

I would therefore reverse the dismissal of the "state action" claim and hold that the complaint, as originally presented, was sufficient on its face [3] to state a claim under 42 U.S.C. § 1983.

---

**3.** The majority writes that it "can conceive of facts that would render the alleged discrimination of Eversole state action . . .." My Brothers do not specify such facts as they conceive. I am sure, however, that none would dispute the proposition that state action would be established if it could be shown that the coroner was aware of any racial discrimination practiced by Eversole when the contract was entered into, or at any subsequent time prior to the incident involved in this action.