Dave **GIBSON**, Jr., **Plaintiff-Appellant**,

v.

Alan J. **DIXON**, **Defendant**,

**and**

The **First National Bank of Lincolnwood**, **Defendant-Appellee**.

No. 77–1450.

United States Court of Appeals, Seventh Circuit.

Heard Jan. 17, 1978.

Decided July 25, 1978.

James O. Latturner, Anthony J. Fusco, Jr., Legal Assistance Foundation, Chicago, Ill., for plaintiff-appellant.

Donald R. Harris, Jenner & Block, Chicago, Ill., for defendant-appellee.

Before SWYGERT and CUMMINGS, Circuit Judges, and EAST, Senior District Judge.[*]

PER CURIAM.

This case explores whether a bank's participation in Illinois' statutory procedure for selling an automobile after it is repossessed constitutes state action. In Count I of his complaint brought under 42 U.S.C. § 1983, plaintiff on behalf of himself and others similarly situated[1] sued the Illinois Secretary of State and the First National Bank of Lincolnwood, Illinois, seeking declaratory and injunctive relief. It was claimed that Ill.Rev.Stats. ch. 95½, §§ 3–114(b), 3–116(b) and 3–612, and ch. 26, §§ 9–503 and 9–504, and the regulations and procedures thereunder violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment because they "authorize the repossession and subsequent sale of a debtor's property upon the alleged default of a security agreement without prior notice or opportunity to be heard and permit, authorize and compel the [Illinois] Secretary of State to transfer title and issue a new certificate of title to a transferee after an involuntary repossession and to issue special repossessor plates to those in the business of repossessing automobiles" (App. 1–2). In Count II, plaintiff sought $12,000 from the Bank for its repossession and sale of his 1974 Pontiac and also sought $50,000 from the Bank in punitive damages.

Plaintiff purchased the automobile that was later repossessed, a 1974 Pontiac, on October 28, 1974, from a Skokie, Illinois, dealer pursuant to a retail installment contract. He made a down payment of $2,235 and agreed to pay the balance in 36 monthly installments of $98.78 commencing in December 1974. Shortly after he purchased the car, the dealer assigned the contract to defendant Bank.

Gibson paid the first eight installments. However, in January 1975 he lost his job and had to apply for unemployment compensation benefits. As a result of an alleged administrative error, he failed to receive his July unemployment compensation check and did not receive another such check until October 29, 1975, when he received a lump-sum unemployment check covering the hiatus.

Before August 1, 1975, and again on August 30, 1975, plaintiff called the Bank and told the Bank he would bring his account up to date as soon as his unemployment check arrived. However, on October 28, 1975, the Bank assertedly repossessed the automobile pursuant to Ill.Rev.Stats. ch. 26, § 9–503, without plaintiff's knowledge or consent and without any prior notice to him.

On October 28, 1975, the Bank sent plaintiff a notice of its intent to apply for a repossession title from the Illinois Secretary of State pursuant to Sections 3–114 and 3–116 of the Illinois Motor Vehicle Code. This notice advised plaintiff that the Bank

---

[*] Senior District Judge William G. East of the District of Oregon is sitting by designation.

1. Plaintiff's motion for class certification was denied on November 9, 1976, and is not involved in this appeal.

would sell the car on November 12, 1975, unless within 15 days plaintiff should make back payments of $2,765.84 plus $60 for expenses incurred by the Bank, or a total of $2,825.84. The notice also provided that if plaintiff denied that a default had occurred, he could apply to a court of competent jurisdiction for relief. Finally, the notice advised him that the Illinois Secretary of State would issue a new certificate of title to the Bank unless the Bank received an affidavit of defense within 15 days "sworn to by you [Gibson] stating that you have not failed * * * to comply with the security agreement and that you did make payments due on 8–10 and 9–10 and 10–10, 1975." The Bank did not indicate that any other defenses were available nor did it send plaintiff a form affidavit of defense.

On November 5, 1975, within 15 days from the Bank's notice of intent to apply for a repossession title, plaintiff submitted a sworn "Notice of Defense" to the Bank providing as follows:

"I, Dave Gibson, hereby (swear) that I have made all required payments under the contract through the installment due on the 10th day of July, 1975, and I have a bona fide defense to the application of First National Bank of Lincolnwood for the issuance of a new certificate of title to the automobile, which application is based on a debt contracted on the 28th day of October, 1974."

This affidavit was received by the Bank on November 7 and showed that plaintiff had been in default since July 10, 1975. Plaintiff's Notice of Defense was enclosed in a November 5, 1975, letter from his counsel to the Bank advising that plaintiff was "ready to tender any deficiency plus your costs of repossession" as well as to make advance payments for the next two months.

According to the verified complaint, the Bank thereafter refused plaintiff's offer to redeem the automobile and insisted "on full payment of the total balance due." On November 17, 1975, the Bank notified plaintiff that the amount then due on the contract was $487.84, but refused his tender of "an amount in excess of $500" (App. 9).

The Bank subsequently advised plaintiff that it had determined that his Notice of Defense was invalid (App. 9), and on November 20, 1975, it submitted an application to the Secretary of State for a repossession title. In the Bank's affidavit of repossession, Joseph W. Diesi, assistant vice president of the Bank, advised the Secretary of State that the Bank did not receive an affidavit of defense from plaintiff, although it simultaneously forwarded to the Secretary of State a copy of plaintiff's sworn Notice of Defense sent to the Bank on November 5. After receiving the Bank's affidavit of repossession, the Secretary of State issued a new title to the Bank and it sold the Pontiac to Danny Thrasher Motors of Albertaville, Alabama, for $2,243 on December 2, 1975. The Bank received a repossession certificate of title on December 5, 1975, and forwarded it to the purchaser's Albertaville bank on the same day.

On November 9, 1976, the district judge dismissed the Bank from Count I on mootness grounds, apparently because Gibson's auto was sold before the complaint was filed, and from Count II on the ground that the requisite state action was not present as to the Bank. Count I's claim against the Secretary for injunctive relief also was dismissed as moot, but the Secretary remained in the case as a defendant in the claim for declaratory relief. On February 10, 1977, the Secretary and the plaintiff entered into a consent decree requiring the Secretary to promulgate new regulations and procedures to govern a lienholder in the application for a transfer of title and issuance of a new certificate of title to a repossessed car. The key aspects of this decree are first that the Secretary has prescribed the form of notice the creditor must send to the debtor and advised the creditors that no substitutions will be accepted. Also, the decree requires the Secretary to notify lienholders that they have no authority or power to determine the validity or invalidity of an affidavit of defense and that if a lienholder receives any signed, notarized affidavit of defense it must apply to a court of competent jurisdiction to determine whether the

creditor is entitled to possession of the vehicle. While the decree seems to satisfy the essence of plaintiff's objection to the procedures, the decree became effective after the complained of repossession and sale and does not affect plaintiff's action against the Bank.

Judge Will on March 16, 1977, entered an order making final his November 9, 1976, order in favor of the defendant Bank. Plaintiff has appealed only from the dismissal of Count II (containing the damage claim against the Bank). He submits that the Bank's acts in transferring title to Thrasher Motors and selling his repossessed automobile satisfied Section 1983's state action requirement,[2] either because of the State's delegation of its powers to the Bank or because of the aid, assistance and involvement of state officials in the Bank's actions. The district court disagreed but filed no opinion. We affirm for the reasons that follow.

## I.  *Delegation*

The thrust of plaintiff's first theory for finding state action is that the acts of prescribing and determining the sufficiency of forms are "state functions" and that they were delegated to the Bank. On a motion to dismiss we must accept as true the allegation that the creditor has complete discretion to select and judge the sufficiency of certain forms, and focus on whether such selection and judgment constitute state action. We hold that they do not on these facts.

According to the procedures of the Secretary of State admittedly then in effect, the creditor was required to give the debtor notice of the creditor's intention to apply for repossession title and of the debtor's right to file an affidavit of defense. After such notice, the debtor thereupon had 15 days to submit an affidavit. The regulations then provided that the submission of any affidavit of defense by a debtor deprives the creditor of an opportunity to file an Affidavit of Repossession and requires him to obtain a court order before he is entitled to possession and title. Under the regulations the Secretary would transfer title only upon receipt of the creditor's affidavit that he had sent the notice and not received an affidavit of defense or a court order declaring the creditor entitled to title.

While plaintiff later urges that the joint participation of the creditor and State is itself sufficient to constitute state action, his claim here is a bit more complex. Instead, he notes that Illinois Motor Vehicle Code ch. 95½, § 2–106 provides that the Secretary shall prescribe "forms requisite or deemed necessary to carry out the provisions of this Act" and that § 2–110 provides that the Secretary shall "examine and determine the genuineness, regularity and legality" of any "application lawfully made to the Secretary of State." He then contrasts this scheme with the assertion that in this case the Bank provided its own form of notice to the debtor and was allowed to judge the sufficiency of the debtor's affidavit. Based on those assertions, his complaint alleged state action on the ground that despite the statute placing the duties on the Secretary, in practice "the creditor retains complete discretion as to the form and content of its notice and the suggested form of the affidavit of defense," and "the creditor has sole discretion to determine if the affidavit is valid."

Looking first to the claim of state action based on the delegated duty to prescribe forms, it is important to recognize that in the absence of any statute there would not be even a colorable claim that the Bank's development and use of its own form constitutes state action. Prescribing the wide variety of legal forms used today hardly can be said to be a function traditionally

**2.**  42 U.S.C. § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

reserved to the State. See *Lucas v. Wisconsin Electric Power Co.*, 466 F.2d 638, 653 (7th Cir. 1972) (*en banc*), certiorari denied, 409 U.S. 1114, 93 S.Ct. 928, 34 L.Ed.2d 696. The fundamental issues, then, are whether the statute places a duty to prescribe such forms on the Secretary and if so whether the statute, by placing the responsibility for the function on the State, can convert the Bank's action into state action. To resolve this claim we need go no farther than the first issue because in our view the statute does not place an exclusive duty on the Secretary to prescribe the forms involved.

The statute that purportedly places the duty on the Secretary, Illinois Motor Vehicle Code ch. 95½, § 2–106, provides:

"*Secretary of State to prescribe forms.* The Secretary of State shall prescribe or provide suitable forms of applications, certificates of title, registration cards, driver's licenses and such other *forms* requisite or deemed necessary to carry out the provisions of this Act and any other laws pertaining to vehicles the enforcement and administration of which are vested in the Secretary of State."

Since a notice to the debtor is not a form expressly mentioned either in Section 2–106 or in the Motor Vehicle Act, it must be a form "requisite or deemed necessary" if it is covered by the Section. While it would be possible to argue that the phrase "deemed necessary" gives the Secretary discretion to decide only whether notice is necessary and not whether to prescribe a specific form of notice once some notice is found to be necessary, read broadly the Section gives the Secretary discretion to decide that although notice is needed, no particular form is necessary to carry out the provisions of the Act. Even if that phrase is read narrowly, the language that the Secretary shall "prescribe *or provide suitable* forms" may indicate that at least for those forms not listed in the Section the Secretary's forms were not intended to be exclusive. In view of these plausible readings of the statute, the

Secretary's failure to provide forms should not be viewed as a delegation of that authority but rather as a decision by a state administrator construing a state statute that it was not necessary to prescribe an exclusive form for these purposes.[3]

While it has considerable facial appeal, plaintiff's related contention that the Bank was delegated adjudicatory power to determine the sufficiency of the debtor's affidavit also does not suffice to make the Bank's action state action. Apparently plaintiff's theory on appeal is not, and could not be on these facts, that the Bank in unilaterally declaring that no affidavit existed was purporting to act under color of state law. Compare *Roberts v. Acres*, 495 F.2d 57 (7th Cir. 1974). The fact that the Bank enclosed the debtor's affidavit with its own would be strong evidence that it was not purporting to act as the ultimate decision maker under color of state law. Nor would it be correct to say that the Secretary's regulations requested or authorized the Bank's actions. Compare *Particular Cleaners, Inc. v. Commonwealth Edison Co.*, 457 F.2d 189 (7th Cir. 1972), certiorari denied, 409 U.S. 890, 93 S.Ct. 107, 34 L.Ed.2d 148. Rather, the regulations properly understood did not allow the Bank to assume adjudicatory functions; in fact they required the Bank to seek court approval if the debtor submitted an affidavit. The fact that the Bank violated the regulation in this case does not detract from the plain meaning of the regulation's requirement or provide the requisite state action. See *Flagg Bros. Inc. v. Brooks*, —— U.S. ——, ——, 98 S.Ct. 1729, 56 L.Ed.2d 185 (Stevens, J., dissenting).

Thus the only theory relating to the exercise of the State's adjudicatory powers on which plaintiff might prevail is the argument that despite the regulations, in practice creditors were allowed to determine the sufficiency of affidavits and that such a *de facto* delegation of adjudicatory power in violation of the statute means that the

---

**3.** Neither party suggested that abstention pending resolution of this issue of state statutory construction would be appropriate (see *Bellotti v. Baird*, 428 U.S. 132, 143 n. 10, 96 S.Ct. 2857, 49 L.Ed.2d 844), and in light of our view of the clear meaning of the statute and of the insufficiency of plaintiff's allegations, discussed *infra*, abstention is unnecessary.

Bank is performing a state function. Although the characterization is not determinative and plaintiff did not state the argument in this fashion, the theory could be tied to the words of Section 1983 by expressing the claim as a denial "under color of any statute * * * custom or usage:" here the custom assertedly was that the creditors were allowed to make a final determination of the sufficiency of the affidavits based on whatever grounds they deemed appropriate. What is notably missing from this assertion, however, is any allegation that the Bank was aware of its role or intended to act as the final arbiter, or that the Secretary or any of his subordinates agreed to, were aware of or intended to allow the Bank to perform what we assume for these purposes is an exclusive state function.[4]

While the question of what needs to be alleged in order to state a claim that a private party was acting under color of custom, or was delegated a state responsibility in practice, has not received considerable attention, the cases establish that plaintiff's omission of those allegations is significant. In those cases that have discussed analogous private actions that either are assertedly undertaken pursuant to a state custom or are apparently permitted despite being in violation of state law, some allegation of knowledge by the private party of (or causation by) the custom (see *Adickes v. S. H. Kress & Co.*, 398 U.S. 144,

174 n. 44, 90 S.Ct. 1598, 26 L.Ed.2d 142; *Doe v. Charleston Area Medical Center, Inc.*, 529 F.2d 638, 643 (4th Cir. 1975); *Writers Guild of America, West, Inc. v. Federal Communications Commission*, 423 F.Supp. 1064, 1137 (C.D.Cal.1976)), or knowledge by the state official that violation of the law was being permitted (see *Scott v. Eversole Mortuary*, 522 F.2d 1110, 1114, 1119 n. 3 (9th Cir. 1975);[5] *Curtis v. Everette*, 489 F.2d 516, 521 (3d Cir. 1973), certiorari denied, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774) has been required.[6] Without such a requirement it could be argued in almost any instance of state inaction that by not acting the State in effect delegated its responsibility to the private party when the private party's act was not prohibited. Cf. *Terry v. Adams*, 345 U.S. 461, 470, 473–475, 73 S.Ct. 809, 97 L.Ed. 1152 (opinion of Frankfurter, J.); *Lucas v. Wisconsin Electric Power Co.*, 466 F.2d 638, 647 (7th Cir. 1972) (*en banc*), certiorari denied, 409 U.S. 1114, 93 S.Ct. 928, 34 L.Ed.2d 696. Such a result would broaden markedly the scope of the state action doctrine and would be inconsistent with the accepted "state action concern for preventing government *involvement* in wrongdoing while preserving private autonomy." *Writers Guild of America, West, Inc. v. Federal Communications Commission*, 423 F.Supp. 1064, 1137 (C.D. Cal.1976) (emphasis added). Because the fact that the Bank was permitted to participate in what can be assumed to be exclusive state functions in violation of statute with-

---

4. The closest plaintiff comes to so alleging is his statement that "[i]n the procedure adopted by the Secretary to effectuate the involuntary termination of a certificate of title and transfer of said certificate to another person * * * the creditor has sole discretion to determine if the affidavit is valid." Even read broadly, this statement of how the scheme operates in practice cannot be said to touch on the Bank's knowledge. Plaintiff made no allegation that the State was aware of such a delegation either. Even if it had been asserted that the Bank's attachment of the debtor's affidavit meant that the State knew of the Bank's exercise of adjudicatory power, rather than that a state official simply failed to see the affidavit or its significance, an assertion of knowledge of a general delegation to creditors probably would have been difficult to prove in light of an affidavit submitted by the Secretary, which report-

ed that the Bank's affidavit here apparently was the first time in approximately the last 95,000 repossession title issuances that an Affidavit of Repossession was accompanied by a debtor's Affidavit of Defense.

5. *Scott* involved racial discrimination and indicated that state action might be easier to prove when racial discrimination is involved. *Id.* at 1114 n. 6. Accord *Pitts v. Department of Revenue for State of Wisconsin*, 333 F.Supp. 662, 668–669 (E.D.Wis.1971) (three-judge court). We need not decide that issue because plaintiff here did not meet the state action standard of racial discrimination cases such as *Adickes* and *Scott*.

6. We imply no view on whether constructive knowledge is sufficient.

out an allegation of knowledge of the situation by the Bank or the State therefore cannot turn the Bank's action into state action, the district judge properly rejected this theory.

## II. Alternate Theories

Plaintiff's remaining theories of state action center on those aspects of the repossession sale process in which the State does participate. It is asserted that in transferring title the state officials aided and assisted the Bank's sale, that the State is significantly involved in the transfer of title and repossession sale process, and that the Bank's deprivation of Gibson's due process rights was enforced by the State. In light of *Flagg Bros. Inc. v. Brooks*, —— U.S. ——, 98 S.Ct. 1729, 56 L.Ed.2d 185, these theories must be rejected.

These theories are based on the Secretary's power to transfer title and the resulting statutory authorization for sale. Particularly in light of the state officials' ministerial role in certifying title when the regulations are properly understood, we agree with the Third Circuit in *Parks v. Mr. Ford*, 556 F.2d 132, 141 (3d Cir. 1977) (*en banc*) that this "minor involvement" of issuing a certificate "is not sufficient to transform essentially private transactions into state action." Cf. *People v. Disharoon*, 5 Ill.App.3d 42, 45, 282 N.E.2d 506 (1st Dist.1972). While the decision is not free from ambiguity (see *Flagg Bros. Inc. v. Brooks*, —— U.S. ——, ——, n. 8, 98 S.Ct. 1729, 56 L.Ed.2d 185 (Stevens, J., dissenting)), it cannot be doubted after *Flagg Bros.* that the availability of this creditor's remedy under state law does not by itself mean that the sale constitutes state action. See also *Nichols v. Tower Grove Bank*, 497 F.2d 404 (8th Cir. 1974); *Melara v. Kennedy*, 541 F.2d 802 (9th Cir. 1976).

Finding plaintiff's theories to be without merit, we affirm the judgment dismissing the complaint.