Susan K. FORSYTH, et al., Plaintiffs,

v.

ELI LILLY AND COMPANY,
et al., Defendants.

Civ. No. 95–00185ACK.

United States District Court,
D. Hawai'i.

July 28, 1995.

Jeffrey A. Damasiewicz, Case Myrdal Bigelow & Lombardi, Honolulu, HI, J. Clark Aristei, William J. Downey, III, Kananack Murgatroyd Baum & Hedlund, Los Angeles, CA, for Susan K. Forsyth, Estates of June M. Forsyth and William D. Forsyth, William F. Forsyth, Jr.

Patricia C. Aburano, Burke Sakai McPheeters Bordner Iwanaga & Estes, Honolulu, HI, Andrew See, Shook Hardy & Bacon, Kansas City, MO, for Eli Lilly and Company and Dista, Inc.

Michael Chun, United States Attorneys Office, Honolulu, HI, Lisa S. Goldfluss, U.S. Department of Justice, Torts Branch, Civil Division, Washington, DC, Annamarie Kempic, Associate Chief Counsel for Enforcement, U.S. Food and Drug Administration, Rockville, MD, for U.S.

## ORDER GRANTING DEFENDANT THE UNITED STATES' MOTION TO DISMISS

### BACKGROUND

KAY, Chief Judge.

Currently before this Court is Defendant the United States' Motion to Dismiss and for Summary Judgment. In particular, the government requests that this Court dismiss the action against it pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim, respectively. According to the government, this action is barred by the discretionary function and misrepresentation exceptions to the Federal Tort Claims Act. *See* 28 U.S.C. § 2680(a), (h). Additionally, the government moves for summary judgment over William Forsyth, Jr.'s claim against the government because he has not exhausted his administrative remedies. Plaintiff William Forsyth, Jr. has filed a statement of no objection to this motion.

This matter arises out of Plaintiffs Susan Forsyth, June Forsyth, William Forsyth and William Forsyth, Jr.'s (jointly "Plaintiffs") action for wrongful death against Defendants Eli Lilly and Company; Dista, Inc. (jointly "Manufacturers"); and the United States of America ("government") in connection with William Forsyth's murder of his wife, June, and his subsequent suicide. The gravamen of Plaintiffs' claim against the government is that the federal Food and Drug Administration ("FDA") negligently approved the drug Prozac for marketing within the United States. William Forsyth's physician prescribed Prozac for treatment of Forsyth's depression. After ingesting the drug over approximately a two week period, William Forsyth stabbed and killed his wife and then killed himself. According to Plaintiffs, Forsyth undertook these acts as a direct and proximate result of taking the drug Prozac.

## STANDARD OF REVIEW

### I. MOTION TO DISMISS

On a motion to dismiss for lack of subject matter jurisdiction under 12(b)(1), Federal Rules of Civil Procedure, the plaintiff's allegations are not presumed to be truthful, and the plaintiff has the burden of proof that jurisdiction exists. *Thornhill Publishing Co., Inc. v. General Telephone & Electronics Corporation*, 594 F.2d 730, 733 (9th Cir.1979). "[A] Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency," whereupon the plaintiff must "present affidavits or any other evidence necessary to satisfy its burden." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989), *cert. denied*, 493 U.S. 993, 110 S.Ct. 541, 107 L.Ed.2d 539 (1989).

Under Fed.R.Civ.P. 12(b)(6), in determining whether to grant a motion to dismiss for failure to state a claim upon which relief can be granted, this Court must accept as true the plaintiff's allegations contained in the complaint and view them in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Wileman Bros. & Elliott, Inc. v. Giannini*, 909 F.2d 332, 334 (9th Cir.1990); *Shah v. County of Los Angeles*, 797 F.2d 743, 745 (9th Cir.1986). Thus, the complaint must stand unless it appears beyond doubt that the plaintiff has alleged no facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Balistreri*, 901 F.2d at 699; *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir.1984).

In essence, as the Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.), *cert. denied*, 441 U.S.

965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979). The Court must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiffs' claims. *Id.*

A motion under Rule 12(b)(6) should also be granted if an affirmative defense or other bar to relief is apparent from the face of the Complaint, such as absolute immunity, statute of limitation or res judicata. 2A J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice*, ¶ 12.07 at 12–68 to 12–69 (2d ed.1991 & supp. 1191–92) (citing *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)).

If, in connection with defendants' motion to dismiss for failure to state a claim, the Court considers matters outside the pleadings, that portion of the defendant's motion to dismiss should be treated as one for summary judgment. Rule 12(b)(6), Fed.R.Civ.Pro.; *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1233, 31 L.Ed.2d 569 (1972); *Coverdell v. Dept. of Social & Health Services*, 834 F.2d 758 (9th Cir.1987).

### II. SUMMARY JUDGMENT

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allega-

tions in the pleadings in order to preclude summary judgment." *T.W. Electrical. Serv. v. Pacific Elec. Contractors Assoc.,* 809 F.2d 626, 630 (9th Cir.1987). Instead, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *Id.* At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

■ The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987), *citing, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

■ The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis original), *citing, Matsushita, supra,* 475 U.S. at 587, 106 S.Ct. at 1356. Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Services,* 809 F.2d at 630–31.

## DISCUSSION

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), authorizes suits against the United States for damages

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

This waiver of sovereign immunity, however, is limited by the exceptions enumerated in 28 U.S.C. § 2680. The government contends that the present action is barred by § 2680(a), the discretionary function exception, and § 2680(h), which excepts claims arising out of misrepresentations and other various acts. For the reasons stated below, the Court agrees that Plaintiffs' claims fall squarely within the discretionary function exception.

■ Section 2680(a) of the FTCA provides that the Act will not apply to

> [a]ny claim based upon ... the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The discretionary function exception to the FTCA is designed to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines,* 467 U.S. 797, 814, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984).

■ To determine if the discretionary function applies, courts must apply a two-part inquiry. First, "a court must consider whether the action is a matter of choice for the acting employee." *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). Second, the court must determine whether the element of

**1158**

judgment involved "is of the kind that the discretionary function exception was designed to shield." *Id.* Under this second prong, the court must determine whether the challenged discretionary actions or decisions were "based on considerations of public policy." *Id.* at 537, 108 S.Ct. at 1958. "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *United States v. Gaubert,* 499 U.S. 315, 325, 111 S.Ct. 1267, 1274, 113 L.Ed.2d 335 (1991).

▮▮ The discretionary function exception is not limited to promulgation of regulations and planning-level decisions. *Gaubert,* 499 U.S. at 322, 111 S.Ct. at 1273. The daily actions of government agents carrying out agency programs are also protected where the acts involve choice and are grounded in the social, economic or political goals of the agency. "[I]f a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation. If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy. On the other hand, if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Id.* at 324, 111 S.Ct. at 1274 (cites omitted).

A close analysis of the United States Supreme Court's decision in *Berkovitz* is instructive. The plaintiffs in *Berkovitz* challenged the government's licensing of an oral polio vaccine and its subsequent approval of the release of a specific lot of that vaccine to the public. 486 U.S. at 533, 108 S.Ct. at 1956. The manufacture of vaccines and other biological products is regulated pursuant to 42 U.S.C. § 262, which provides that a manufacturer must receive a product license prior to marketing a brand of live oral polio vaccine. The FDA promulgated regulations

which set forth detailed safety criteria for the development of a polio virus strain and the specific tests which a manufacturer must conduct to measure the safety of the product at each stage of the manufacturing process. 21 C.F.R. §§ 630.10, 630.16 (1987). The parameters of these tests are set forth in detail, including such factors as the number of test animals to be injected with the virus, the amount of virus to be injected, the location of the injection and the number of days the test animals are to be observed. 21 C.F.R. § 630.10(b)(4) (1987).

Title 42 mandates that the government issue licenses for biological products "only upon a showing that the establishment and the products for which a license is desired meet standards, designed to insure the continued safety, purity, and potency of such products, prescribed in regulations, and licenses for new products may be issued only upon a showing that they meet such standards." 42 U.S.C. § 262(d). The FDA's polio vaccine regulations similarly provide that "[a] product license shall be issued only upon examination of the product and upon a determination that the product complies with the standards prescribed in the regulations." 21 C.F.R. § 601.20 (1987). Accordingly, the government may issue a license for a polio vaccine only after ensuring that the manufacturer complied with the criteria and tests described in the regulations referenced above. *Berkovitz,* 486 U.S. at 542, 108 S.Ct. at 1961. Had the agency issued a license without first receiving the required test data showing how the product matched up against the regulatory safety standards at various stages of the manufacturing process, it would have violated a specific statutory and regulatory directive. *Id.* Such action would not be protected by the discretionary function exception to the FTCA. *Id.* at 542–43, 108 S.Ct. at 1961–62. Likewise, had the agency licensed the vaccine after determining that the vaccine failed to comply with the regulatory standards, the discretionary function exception would not bar claims based on such action. *Id.* at 544, 108 S.Ct. at 1962. If, on the other hand, the agency had incorrectly determined that the vaccine complied with the criteria, application of the discretionary function exception would hinge on whether

the agency officials making that determination permissibly exercised policy choice. *Id.* at 545, 108 S.Ct. at 1963. Finding the evidence before it insufficient to support a finding whether agency officials exercise policy judgment in determining whether a vaccine product complies with the relevant safety standards, the *Berkovitz* Court deferred decision on this question to the district court. *Id.*

Examining the regulatory scheme for release of vaccine lots, the Court noted that while agency regulations "place[ ] an obligation on manufacturers to examine all vaccine lots prior to distribution to ensure that they comply with regulatory standards," the regulations "do not impose a corresponding duty on the [agency]." *Id.* at 545–46, 108 S.Ct. at 1963–64. Rather, the Court found that "[t]he regulations generally allow the [agency] to determine the appropriate manner in which to regulate the release of vaccine lots, rather than mandating certain kinds of agency action." *Id.* at 546, 108 S.Ct. at 1963. However, if the agency had formulated programs and policies regulating the release of vaccine lots which left "no room for an official to exercise policy judgment in performing a given act, or if the act simply does not involve the exercise of such judgment, the discretionary function exception does not bar a claim that the act was negligent or wrongful." *Id.* at 546–47, 108 S.Ct. at 1963–64. The plaintiffs in *Berkovitz* alleged that the agency had adopted a mandatory policy of testing all vaccine lots for compliance with the safety standards and of refusing to release any lots that failed to comply, and that the agency knowingly approved the release of a noncomplying lot. Based on these allegations, the invocation of the discretionary function exception to dismiss the complaint was improper. *Id.* at 547–48, 108 S.Ct. at 1964–65.

■■■ In contrast to the regulations governing licensing of polio vaccines, the FDA statutes and regulations cited by Plaintiffs in the case at bar do not set forth detailed criteria or standards for the development and testing of new drugs. *See Bailey v. Eli Lilly Co.*, 607 F.Supp. 660 (M.D.Penn.1985) (regulations involved in FDA approval of drug were materially different from regulations governing release of polio vaccine); *Gray v. United States*, 445 F.Supp. 337, 341 (S.D.Tex. 1978) (unlike FDA approval regulations, regulations for release of polio vaccine did not have a discretionary "safe for use" standard). 21 U.S.C. § 355(b) simply requires that persons filing an application for approval of a drug submit:

(A) full reports of investigations which have been made to show whether or not such drug is safe for use and whether such drug is effective in use;

(B) a full list of the articles used as components of such drug;

(C) a full statement of the composition of such drug;

(D) a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and packing of such drug;

(E) such samples of such drug and of the articles used as components thereof as the Secretary may require; and

(F) specimens of the labeling proposed to be used for such drug.

The regulations further provide that the agency "shall issue an order refusing to approve the application" if:

(1) the investigations, reports of which are required to be submitted ..., do not include adequate tests by all methods reasonably applicable to show whether or not such drug is safe for use under the conditions prescribed, recommended or suggested in the proposed labeling thereof;

(2) the results of such tests show that such drug is unsafe for use under such conditions or do not show that such drug is safe for use under such conditions;

(3) the methods used in, and the facilities and controls used for, the manufacture, processing and packaging of such drug are inadequate to preserve its identity, strength, quality, and purity;

(4) upon the basis of the information submitted to him as part of the application, or upon the basis of any other information before him with respect to such drug, he has insufficient information to determine

whether such drug is safe for use under such conditions; or

(5) evaluated on the basis of the information submitted to him as part of the application and any other information before him with respect to such drug, there is a lack of substantial evidence that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the proposed labeling thereof; or

(6) the application failed to contain the patent information prescribed by subsection (b) of this section; or

(7) based on a fair evaluation of all material facts, such labeling is false or misleading in any particular.

21 U.S.C. § 355(d). Clearly, under this regulation, agency employees have discretion to determine what methods of testing are reasonably applicable for a given drug, whether the testing performed by the manufacturer was adequate and whether adequate methods and facilities are used for manufacturing the drugs. *See Bailey*, 607 F.Supp. at 662; *Gray*, 445 F.Supp. at 340. Because the regulation does not provide any guidance, agency employees must use their own judgment in making these determinations. They must also determine whether the information submitted by the manufacturer or otherwise available to the agency is sufficient to guide them. The regulation governing withdrawal of the agency's approval of a drug likewise grants agency employees broad discretion. 21 U.S.C. § 355(e).

 Plaintiffs suggest that 21 C.F.R. § 201.57 somehow creates a mandatory policy that the agency ensure that the manufacturer label Prozac as being safe and effective only when used with other adjunct drugs. This regulation prescribes labeling requirements for manufacturers. In particular, Plaintiff cites the provision which states that "the labeling shall state that . . . the drug, if used for a particular indication only in conjunction with a primary mode of therapy, e.g., diet, surgery, or some other drug, is an adjunct to the mode of therapy." This regulation, on its face, is not applicable. Plaintiffs contend that Prozac, a primary drug, is only effective when used in conjunction with

other secondary drugs while § 201.57 requires that secondary drugs, which are only to be used in conjunction with a primary mode of therapy, be labeled as such. Moreover, this regulation does not alter the discretionary nature of an agency determination regarding the appropriateness of any label. *See* 21 C.F.R. § 355(d)(7) (agency determines whether a label is false or misleading "based on a fair evaluation of all material facts").

 Plaintiffs also cite 21 U.S.C. § 331 which sets forth prohibited acts in regards to the introduction of food and drugs into interstate commerce and 21 U.S.C. § 352 which defines misbranded drugs and devices. Again, these prohibitions do not limit agency discretion in determining whether the statutes are complied with. *See Gelley v. Astra Pharmaceutical Products, Inc.*, 466 F.Supp. 182 (D.Minn.1979), aff'd 610 F.2d 558 (8th Cir.1979) ("as the collection and reporting of information concerning xylocaine and the enforcement of such regulations are integral components of the approval or withdrawal decisions, this activity must be considered discretionary as well"). Nor do they sufficiently define criteria to limit agency discretion in determining whether a drug's label is false or misleading for purposes of 21 U.S.C. § 355(d)(7). Section 352 simply states that a drug shall be deemed to be misbranded "[i]f its labeling is false or misleading in any particular." 21 U.S.C. § 352(a).

The agency's approval of Prozac for manufacture and distribution was firmly grounded in the agency's primary function of protecting the public health. Whether to approve a new drug clearly requires agency officials to balance considerations of public policy such as the public's need for new drugs and the public's interest in safe and effective drugs.

In conclusion, the Court finds that Plaintiffs' claims fall squarely within the discretionary function exception to the FTCA. *See Bailey*, 607 F.Supp. at 660 (action involving FDA's approval of a drug barred by the discretionary function exception); *Gelley*, 466 F.Supp. at 182 (action alleging FDA's failure to withdraw prior approval of a drug and to enforce regulations relating to information collection and labeling changes barred by the

discretionary function exception); *Gray*, 445 F.Supp. at 337 (action involving FDA's approval of a drug without warning of its adverse effects barred by the discretionary function exception). Accordingly, this Court does not have jurisdiction over this action. Plaintiffs have also failed to state a claim which this Court can recognize. Therefore, the Court must dismiss Plaintiffs' complaint against the government. Because the Court finds that Plaintiffs' claims are barred by the discretionary function doctrine, it is not necessary for the Court to address Defendant's contention that the claims are also barred by the misrepresentation exception.

### CONCLUSION

For the foregoing reasons, this Court GRANTS Defendant's motion to dismiss Plaintiffs' complaint against the United States of America.

IT IS SO ORDERED.