Jena BALISTRERI, Plaintiff–Appellant,

v.

PACIFICA POLICE DEPARTMENT; Al Olsen, Police Chief, individually and as a police agent, Defendants–Appellees.

No. 87–1969.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 16, 1988.

Original Opinion filed August 23, 1988.

Amended Opinion filed February 27, 1990.

Second Amended Opinion filed May 11, 1990.

---

Susan Jackson Balliet, Legal Aid Soc. of San Mateo County, Redwood City, Cal., for plaintiff-appellant.

Todd A. Roberts, Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Redwood City, Cal., for defendants-appellees.

Before SCHROEDER and FLETCHER, Circuit Judges, and WATERS,* District Judge.

FLETCHER, Circuit Judge:

Jena Balistreri appeals, pro se, the district court's dismissal of her 42 U.S.C. § 1983 complaint for failure to state a claim. The district court's decision is published at 656 F.Supp. 423. We affirm in part, reverse in part, and remand.

## FACTS

Balistreri's complaint, prepared by an attorney, alleges the following facts.

On February 13, 1982, Balistreri was severely beaten by her husband. The Pacifica police officers who responded to her call for assistance removed the husband from the home, but refused to place him under arrest, and were "rude, insulting and unsympathetic" toward Mrs. Balistreri. One of the officers stated that Mrs. Balistreri deserved the beating. Although Balistreri was injured seriously enough to require treatment for injuries to her nose, mouth, eyes, teeth and abdomen, the officers did not offer Balistreri medical assistance.

Sometime after the incident, an unidentified Pacifica police officer pressured Balistreri into agreeing not to press charges against her husband.

Throughout 1982, Balistreri continually complained to the Pacifica police of instances of vandalism and of receiving hundreds of harassing phone calls. She named her husband, from whom she is now divorced, as the suspected culprit.

In November 1982, Balistreri obtained a restraining order which enjoined her former husband from "harassing, annoying or having any contact with her."[1] Subsequent to the service of this order, Balistreri's former husband crashed his car into her garage, and Balistreri immediately called the police, who arrived at the scene but stated that they would not arrest the husband or investigate the incident. During the remainder of 1982, Balistreri reported additional acts of phone harassment and vandalism, but the police "received her complaints with ridicule," denied that any restraining order was on file, ignored her requests for protection and investigation, and on one occasion hung up on her when she called to report an instance of vandalism.

On March 27, 1983, a firebomb was thrown through the window of Balistreri's house, causing fire damage and emotional anguish to Balistreri. The police took 45 minutes to respond to Balistreri's "911" call. Although police asked Balistreri's husband a few questions, they determined he was not responsible for the act; Balistreri complained that the investigation was inadequate, to which the police responded that she should either move elsewhere or hire a private investigator.

Throughout 1983–85, Balistreri was continually subjected to telephone harassment and vandalism. Balistreri contacted Pacific Bell to "trace" the calls. Pacific Bell reported that some of these calls were traced to the former husband's family, but the police refused to act on this information.

Balistreri, represented by counsel, filed a complaint alleging that these acts violated her constitutional rights and caused her to suffer physical injuries, a bleeding ulcer, and emotional distress. The complaint asserted that the defendant police officers had deprived Balistreri of due process and equal protection of the law, and violated her rights to be free of excessive use of force and unreasonable searches and seizures by police. The district court dismissed the complaint with prejudice. After the dismissal, Balistreri ceased to be represented by counsel and was granted leave to proceed in forma pauperis.

## DISCUSSION

### I. Defective Appellate Brief

■ Defendants argue that Balistreri has waived her appeal by failing to follow

---

* Hon. Laughlin E. Waters, Senior U.S. District Judge for the Central District of California, sitting by designation.

1. The restraining order was not attached to the complaint, and does not appear in the record.

the formal requirements for brief-writing, as set forth in Fed.R.App.P. 28 and Ninth Circuit Rule 13. This argument is completely meritless.

The Fifth Circuit has squarely addressed and rejected the argument raised by defendants, that a pro se appeal should be dismissed for failure to comply with the formal requirements of appellate briefs under Fed.R.App.P. 28. *Abdul–Alim Amin v. Universal Life Ins. Co.*, 706 F.2d 638, 640 n. 1 (5th Cir.1983); *see also McCottrel v. E.E.O.C.*, 726 F.2d 350, 351 (7th Cir.1984) (pro se litigants held to lower standard of brief-writing than attorneys). Of the two cases cited by defendants in which issues were not considered due to appellate procedural defects, neither involved a pro se appellant.

■■■ This court recognizes that it has a duty to ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements. *Borzeka v. Heckler*, 739 F.2d 444, 447 n. 2 (9th Cir. 1984) (defective service of complaint by pro se litigant does not warrant dismissal); *Garaux v. Pulley*, 739 F.2d 437, 439 (9th Cir.1984). Thus, for example, pro se pleadings are liberally construed, particularly where civil rights claims are involved. *Christensen v. C.I.R.*, 786 F.2d 1382, 1384–85 (9th Cir.1986); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 1 (9th Cir.1985) (en banc). Defendants suggest no reason to treat pro se appellate briefs any less liberally than pro se pleadings.

■■■ Construing Balistreri's brief liberally, it is obvious that she is appealing the district court's dismissal of her § 1983 complaint for failure to state a claim. Indeed, Balistreri's brief identifies and challenges the specific legal ground of the district court's ruling: "I wish to establish that there was a *very special relationship* between plaintiff and the police department ..." Appellant's Opening Brief at 3. The brief also refers to "discrimination" against Balistreri. *Id.* at 1. Defendants' contention that "Balistreri's opening brief

fails to set forth any specific error by the district court" must be rejected.[2]

## II. *Whether Balistreri has Stated a § 1983 Claim*

■■■ To sustain an action under § 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right. *Rinker v. Napa County*, 831 F.2d 829, 831 (9th Cir.1987) (citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981)). We review de novo the district court's dismissal of Balistreri's complaint under Rule 12(b)(6). *Shah v. County of Los Angeles*, 797 F.2d 743, 745 (9th Cir.1986). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir.1984). On a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Shah*, 797 F.2d at 745. Balistreri claims that defendants breached a duty to protect her imposed by the due process and equal protection clauses of the Fourteenth Amendment, and further claims a violation by defendants of her right to be free from excessive use of force and unlawful searches and seizures by police.

### A. *Due Process*

■■■ The heart of Balistreri's due process claim is that the Pacifica police failed to take steps to respond to the continued threats, harassment and violence towards Balistreri by her estranged husband. There is, in general, no constitutional duty of state officials to protect members of the

---

2. Defendants complain of Balistreri's failure to serve defendants with various papers, but this is

not grounds for dismissal of the appeal. *See Borzeka v. Heckler*, 739 F.2d at 447 n. 2.

public at large from crime. *See Martinez v. California*, 444 U.S. 277, 284–85, 100 S.Ct. 553, 558–59, 62 L.Ed.2d 481 (1980); *Ketchum*, 811 F.2d 1243, 1247 (9th Cir. 1987); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir.1982). However, such a duty may arise by virtue of a "special relationship" between state officials and a particular member of the public. *Ketchum*, 811 F.2d at 1247; *Escamilla v. Santa Ana*, 796 F.2d 266, 269 (9th Cir.1986). Several courts have held that, to determine whether a "special relationship" exists, a court may look to a number of factors, including (1) whether the state created or assumed a custodial relationship toward the plaintiff; (2) whether the state affirmatively placed the plaintiff in a position of danger; (3) whether the state was aware of a specific risk of harm to the plaintiff; or (4) whether the state affirmatively committed itself to the protection of the plaintiff. *See Ketchum*, 811 F.2d at 1247; *Escamilla*, 796 F.2d at 269–70; *Jensen v. Conrad*, 747 F.2d 185, 194 (4th Cir.1984).

▪ As the district court noted, Balistreri alleged neither that the state had created or assumed a custodial relationship over her, nor that the state actors had somehow affirmatively placed her in danger. There were no allegations that the defendants had done anything to "ratify, condone or in any way instigate" the actions of Balistreri's ex-husband. 656 F.Supp. at 425. However, Balistreri did allege that state actors knew of her plight and affirmatively committed to protect her. Specifically, she alleged that the state committed to protect her when it issued her a restraining order.

In the recent case of *DeShaney v. Winnebago County of Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), however, the Supreme Court limited the circumstances giving rise to "a special relationship." Joshua DeShaney fell into a life-threatening coma after he was severely beaten by his father. Prior to this beating, the social services agency recorded multiple incidents indicating that someone in the DeShaney household was physically abusing Joshua and temporarily placed Joshua in the custody of the juvenile court. In the course of explaining its holding that Joshua DeShaney and his mother failed to make out an actionable § 1983 claim, the Court explained that its previous decisions recognizing "affirmative [constitutional] duties of care and protection.... stand only for the proposition that when the State takes a person into its custody and hold him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general wellbeing.... The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id.* 109 S.Ct. at 1005–06. We conclude that the state's knowledge of DeShaney's plight and its expressions of intent to help him were no greater than its knowledge of Balistreri's plight and its expressions of intent to help her. *See id.* at 1010–11 (Brennan, J., dissenting) ("Wisconsin law invites—indeed, directs—citizens and other governmental entities to depend on local departments of social services such as respondent to protect children from abuse.... Through its child-protection program, the State actively intervened in Joshua's life and, by virtue of this intervention, acquired ever more certain knowledge that Joshua was in grave danger."). *DeShaney* is therefore controlling in Balistreri's case. Accordingly, we hold that Balistreri failed to allege "a special relationship" and affirm the district court's dismissal of Balistreri's due process claim.

### B. *Equal Protection*

▪ Balistreri's complaint specifically alleges that Balistreri was deprived of her right to equal protection of the laws. In her response to defendants' motion to dismiss, Balistreri specifically asked for leave to amend her complaint if the court found that she had not recited sufficient facts to state a cause of action. Opposition to Motion to Dismiss 8. The Court refused her request and instead rejected her equal protection claim because "plaintiff has not alleged defendants discriminated against her as a class ..." Order 7. The court dismissed her complaint with prejudice.

Balistreri's equal protection claim is not as clearly and succinctly pleaded as one might wish. There may be reasonable disagreement as to whether sufficient facts are alleged in the complaint to give notice to defendants that the basis for plaintiff's alleged problems lies in her gender and marital status. What is clear, however, is that the district court erred in refusing to grant her request to amend her complaint. Balistreri's request to amend her complaint invokes Fed.R.Civ.P. 15(a), which requires that even where amendment is not a matter of right, leave to amend shall "be freely granted when justice so requires." Under well established Ninth circuit precedent construing Rule 15(a), the court abused its discretion in not granting her leave to amend.

The fact that Balistreri did not present her request to amend her complaint in a separate formal motion is not a bar. As we held in *Scott v. Eversole Mortuary*, 522 F.2d 1110 (9th Cir.1975), Rule 15(a) applies where plaintiffs "expressly requested" to amend even though their request "was not contained in a properly captioned motion paper." *Id.* 1116 n. 8. *See also Edwards v. Occidental Chemical Corp.*, 892 F.2d 1442, 1445 n. 2 (9th Cir.1990) (request for leave to amend should have been granted even though request appeared in opposition to motion for summary judgment and was not formally tendered).

The standard for granting leave to amend is generous. In *Scott v. Eversole Mortuary*, 522 F.2d at 1116 we reversed the district court's dismissal of plaintiff's count insofar as it denied leave to amend because we could "conceive of facts" that would render plaintiff's claim viable and could "discern from the record no reason why leave to amend should be denied." Similarly, in *Breier v. Northern California Bowling Proprietors' Ass'n*, 316 F.2d 787, 789-90 (9th Cir.1963) we held that leave to amend should be granted if underlying facts provide proper grounds for relief or if the complaint can be saved by amendment. "[L]eave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.'" *Id.* at 790 (quoting 3 Moore, Federal Practice, § 15.10 at 838 (2d ed. 1948)).

Balistreri easily meets this standard. Not only can we "conceive of facts" that would constitute an equal protection cause of action, Balistreri's Complaint and Opposition to Motion to Dismiss allege facts which, if true, may be a proper subject of relief. *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 n. 6 (9th Cir.) (although finding the plaintiff's complaint was "somewhat elliptical, the opposition to the motion fairly advised defendant and the district court as to the nature of plaintiffs' claim. Under such circumstances, leave to amend the complaint, rather than dismissal is the appropriate course of action. (citations omitted). We believe the district court abused its discretion by dismissing rather than giving plaintiffs an opportunity to amend the complaint."); *cert. denied*, 485 U.S. 940, 108 S.Ct. 1120, 99 L.Ed.2d 281 (1986). Balistreri's complaint alleges that an officer responding to her 1982 assault complaint allegedly stated that he "did not blame plaintiff's husband for hitting her, because of the way she was 'carrying on.'" Complaint at 3. Such remarks strongly suggest an intention to treat domestic abuse cases less seriously than other assaults, as well as an animus against abused women. *Cf. Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir.1987) (derogatory references by police calling plaintiff "nigger" and "coon" demonstrate racial animus to support claim of malicious prosecution violating equal protection). Plaintiff's response to the motion to dismiss made it clear that the equal protection claim was based upon sex and marital status. The response stated that plaintiff "has alleged facts indicating that as a woman, she was discriminated against when seeking police protection from a known danger, her former husband." Opposition to Motion to Dismiss 6. The response cited as support for its legal theory *Thurman v. City of Torrington*, 595 F.Supp. 1521 (D.Conn. 1984), one of several district court decisions which have held that police failure to respond to complaints lodged by women in domestic violence cases may violate equal protection.

Accordingly, we find that the district court abused its discretion in refusing Bal-

istreri's request to amend her complaint and instead dismissing her equal protection claim with prejudice.

## C. *Excessive Force, Search and Seizure*

Balistreri's complaint alleges no facts at all suggesting that defendants subjected her to any search, seizure, or use of force, lawful or otherwise. There is no allegation tending to show that Balistreri's husband was a state agent, or that his acts were ratified, condoned or instigated by the state. Accordingly, dismissal of these claims was proper.

## CONCLUSION

We AFFIRM the district court's dismissal of plaintiff's search, seizure and use of force claims and due process claim, but REVERSE the dismissal with prejudice of plaintiff's equal protection claim, and remand with instructions to the district court to permit the plaintiff to amend the complaint.

LAUGHLIN E. WATERS, District Judge, concurring in the result.

I withdraw my prior concurring and dissenting opinion. I concur only in the result of the Second Amended Opinion.