IN RE FIRST ALLIANCE MORTGAGE COMPANY, a California corporation; First Alliance Corporation, a Delaware corporation; First Alliance Mortgage Company, a Minnesota corporation; and First Alliance Portfolio Services, a Nevada Corporation, Debtors.

People of the State of Illinois, Plaintiff,

v.

First Alliance Mortgage Company, a California corporation; Brian Chisick; Sarah Chisick; Patricia Sullivan; Salah Bastaway, Defendants.

And Related Cases.

No. SA CV 00–964DOC(EEx).

Bankruptcy Cases Nos. SA 00–12370 LR; SA 00–12371 LR; SA 00–12372 LR; and SA 00–12373 LR (Jointly Administered).

Adversary Case No. Adv. SA 00-1659 LR.

United States District Court, C.D. California.

Jan. 8, 2002.

Barbara Y.K. Chun, Kenneth H. Abbe, Los Angeles, CA, Julie K. Brof, Seattle, WA, Sarah E. Shaw, Washington, DC, Bonnie S. Kartzman, Jeanne-Marie S. Raymond, John A. Krebs, Anne M. McCormick, Marilyn E. Kerst, Washington, DC, David B. Zlotnick, David B. Zlotnick Law Offices, San Diego, CA, Alan Genitempo, Piro Zinna Cifelli & Paris, Nutley, NJ, Ramona D. Elliott, Washington, DC, Hugh E. Hegyi, Hugh E. Hegyi Law Offices, Phoenix, AZ, Robyn C. Smith, Sabrina S. Kim, Albert N. Shelden, Los Angeles, CA, Herschel T. Elkins, Los Angeles, CA, James D. Newbold, Chicago, IL, Thomas P. James, Chicago, IL, Susan Schneider Thomas, Jeanne A. Markey, Berger & Montague, Philadelphia, PA, Thomas A. Jenkins, Daniel J. Mulligan, Jenkins & Mulligan, San Francisco, CA, David W. Meadows, David W. Meadow Law Offices, Beverly Hills, CA, David M. Paris, Alan Genitempo, Piro Zinna Cifelli & Paris, Nutley, NJ, for plaintiffs.

Evan C. Borges, William N. Lobel, Albert Byung Choi, Michael D. Neue, Mi-

242

chael R. Fehner, Irell & Manella, Newport Beach, CA, Ronald Rus, Joel S. Miliband, Laurel R. Zaeske, Leo J. Presiado, Jame P. Mascaro, Rus Miliband & Smith, Irvine, CA, Stuart P. Jasper, Jasper & Jasper, Irvine, CA, Charles H. Kanter, Heather Chang Whitmore, Elise Lynn Enomoto, Palmieri Tyler Wiener Wilhelm & Waldron, Irvin, CA, Jeffrey A. Robinson, Jeffrey A. Robinson Law Offices, Irvine, CA, Jeffrey S. Jacobovitz, Joseph A. Ingrisano, Washington, DC, Michael J. Mills, Newport Beach, CA, Angel A. Garganta, David M. Balabanian, McCutchen Doyle Brown & Enersen, San Francisco, CA, Sheryl D. Brooks, Jennifer M. Phelps, McCutchen Doyle Brown & Enersen, Los Angeles, CA, for defendants.

*ORDER* GRANTING INDIVIDUAL DEFENDANT'S MOTION TO DISMISS COUNT II OF ILLINOIS'S COMPLAINT AND DENYING INDIVIDUAL DEFENDANTS' MOTION TO COMPEL ARBITRATION

CARTER, District Judge.

Before the Court is Defendants Brian Chisick, Patricia Sullivan, and Salah Bastaway's (the Individual Defendants) [1] motion to dismiss Count II as it relates to the individual defendants, for a more definite statement with respect to Counts III–V, and to compel arbitration. After reviewing the moving, opposing, and replying papers, after oral argument on January 7, 2002, and for the reasons set forth below, the Court GRANTS the Individual Defendants' motion to dismiss, DEEMS the opposition by the State of Illinois a more definite statement, and DENIES the motion to compel.

**1.** Sarah Chisick is also a named defendant in

## I.

### BACKGROUND

Defendants First Alliance Mortgage Company of California, First Alliance Corporation of Delaware, First Alliance Mortgage Company of Minnesota, and First Alliance Portfolio Services of Nevada (collectively, First Alliance) have been in the business of subprime mortgage lending since 1971. First Alliance's customers generally were borrowers who would have had difficulty obtaining loans from conventional sources because of poor credit ratings or insufficient credit histories. The loans, many of which were refinancings by homeowners who had developed significant equity in their homes, typically were secured by the borrowers' first mortgages. As of 1999, First Alliance or affiliated entities were licensed to operate in eighteen states and the District of Columbia and serviced nearly $900 million in loans.

The Individual Defendants are all alleged to be officers, employees, or agents of First Alliance. In recent years, a number of lawsuits were filed against First Alliance, alleging that its lending practices violated various consumer protection laws. First Alliance's lending practices became the focus of national publicity when the *New York Times* and the television program "20/20" carried stories that exposed the company's allegedly deceptive practices and highlighted the number of lawsuits that had been filed against it. A few days later, on March 23, 2000, First Alliance filed a voluntary petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330, because of the costs associated with the growing number of lawsuits.

Illinois filed a proof of claim in the bankruptcy proceeding and subsequently brought its enforcement actions against

this matter, but did not join in the motion.

First Alliance in this consolidated proceeding.

This case was commenced in October 2000 by the Federal Trade Commission. The Court subsequently withdrew the reference of several proofs of claim and consolidated the proceedings in this matter. On October 19, 2001, after this Court issued its Order Re Subject Matter Jurisdiction, Illinois filed its Amended Complaint against First Alliance, naming the Individual Defendants. The Individual Defendants now bring the present motions.

## II.

### MOTION TO DISMISS COUNT II

#### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint can be dismissed when the plaintiff's allegations fail to state a claim upon which relief can be granted. The court must construe the complaint liberally, and dismissal should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988) (stating that a complaint should be dismissed only when it lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory). The court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir.1993); *Balistreri*, 901 F.2d at 699; *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir.1996); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

#### B. Discussion

■ Illinois's second claim for relief is brought pursuant to the Truth in Lending Act (TILA), 15 U.S.C. §§ 1639–1640. TILA gives a private right of action against "any creditor who fails to comply with any requirement imposed under this part...." In 1994, Congress passed the Home Ownership and Equity Protection Act of 1994 (HOEPA), Pub.L. 103–325, §§ 151–158, which added the right for any state attorney general to bring "[a]n action to enforce a violation of section 1639 of this title." 15 U.S.C. § 1640(e).[2]

Illinois concedes that the Individual Defendants are not "creditors" as defined in Section 1602,[3] and therefore no private enforcement action could be brought against them. However, it argues that it can bring actions against non-creditors pursuant to the authority granted to state attorneys general by HOEPA. Illinois

---

**2.** As Illinois points out, the statute is inartfully drafted, and seeks to enforce the statute or prevent its violation, not to actually "enforce a violation."

**3.** "The term 'creditor' refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit ... and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable...." 15 U.S.C. § 1602(f). Because First Alliance is the original person to whom the debt is payable, the Individual Defendants cannot be creditors.

cites no authority to support its position, except the general notion that TILA is to be liberally construed. *See Littlefield v, Walt Flanagan & Co.*, 498 F.2d 1133 (10th Cir.1974).

Illinois's argument fails for two reasons. First, Illinois's complaint seeks to "enforce" 15 U.S.C. § 1639(h), which states that "a creditor shall not engage in a pattern or practice of extending credit to consumers under mortgages ... without regard to the consumer's repayment ability...." Illinois cannot seek to enforce a rule directed at a creditor against a non-creditor. Second, prior to adoption of HOEPA, only individual borrowers or the FTC could bring an enforcement action. Section 1640(e) only expands the scope of potential TILA plaintiffs, not TILA Defendants. State attorneys general cannot bring claims against persons that individual consumers could not bring claims against.

Accordingly, the Individual Defendants' motion to dismiss Count II as it relates to them is GRANTED.

## III.

## MOTION FOR A MORE DEFINITE STATEMENT

The Individual Defendants contend that they cannot determine from the face of the complaint whether Illinois intends to bring claims against them enumerated in Counts III–V of its complaint, and accordingly request a more definite statement. In its opposition, Illinois clarifies that it is not seeking relief in this matter for the claims set forth in Counts III–V. Accordingly, the Court DEEMS Illinois opposition to be the more definite statement that the Individual Defendants requested under Federal Rule of Civil Procedure 12(e).

## IV.

## MOTION TO COMPEL

### A. Legal Standard

 In cases governed by the Federal Arbitration Act (FAA) of 1947, federal courts are empowered to compel arbitration and to stay actions arising out of disputes that are subject to an arbitration agreement. 9 U.S.C. § 3. A party aggrieved by another party's failure to submit a dispute to arbitration may petition a district court for an order compelling arbitration. 9 U.S.C. § 4. "The Court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration...." *Id.* Further, the Court should then stay all arbitrable claims. 9 U.S.C. § 3 ("[U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, [the court] *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement....") (emphasis added). When a case includes both arbitrable and non-arbitrable claims, the district court has discretion either to stay all the claims or to stay only the arbitrable claims and proceed with the non-arbitrable claims. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n. 23, 103 S.Ct. 927, 939 n. 23, 74 L.Ed.2d 765 (1983); *United States for the Use & Benefit of Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1426–27 (9th Cir.1985).

 There are some exceptions to arbitration. If the arbitration clause is not enforceable as a matter of contract law, or if no agreement to arbitrate was ever actually entered into, the dispute need not be sent to arbitration. In addition, the legis-

lature may indicate that a statutory claim is not subject to arbitration.

## B. Discussion

■ All of the First Alliance lending agreements include an arbitration agreement which requires borrowers to submit their disputes with First Alliance or its employees to binding arbitration. The arbitration agreement includes a specific waiver of the borrowers rights to trial by judge or jury, appeal, discovery, and the rules of evidence.

■ The question here, however, is whether the arbitration agreement can be used to force the state, a non-party to the agreement, into arbitrating its regulatory actions to enforce consumer protection laws. The FAA was passed by Congress to reverse the traditional disfavor with which federal courts looked upon arbitration agreements. *See Danielsen v. Entre Rios Rys. Co.*, 22 F.2d 326, 327 (D.Md. 1927). Prior to passage of the FAA, "agreements for arbitration would not be allowed to oust the jurisdiction of the federal courts. Therefore no effect was given to them, even though they might be recognized as valid." *Id.* The FAA now requires that district courts compel arbitration when another party has failed, neglected, or refused "to arbitrate under a written agreement for arbitration." 9 U.S.C. § 4. By enacting the FAA, Congress made arbitration agreements enforceable against the parties to the agreement.

The Individual Defendants cite several cases in which a governmental agency has been required to arbitrate its claims. In all of those cases, however, the governmental entity was either a party to the arbitration agreement or was representing the interest of a party to the agreement.

*United States v. Bankers Ins. Co.*, 245 F.3d 315 (4th Cir.2001) (requiring the United States, suing on behalf of the Federal Emergency Management Agency, to arbitrate its claims stemming from a Financial Assistance/Subsidy Agreement between FEMA and the defendant); *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372 (9th Cir.1997) (requiring that claims of the California Insurance Commissioner, as trustee for insolvent reinsureds, to recover reinsurance proceeds be arbitrated).

No cases, however, can be found where a defendant seeks to compel a government regulatory agency to arbitrate its claims. The Individual Defendants argue that these claims are subject to arbitration because they arise from alleged practices which individual consumers, were they to bring the claims, would be forced to arbitrate. Additionally, the Individual Defendants point out that the mere fact that the plaintiff seeks to enforce a statutory regulation which a governmental agency can also enforce does not take the case out of the ambit of the FAA. The Individual Defendants cite *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S.Ct. 1647, 1653, 114 L.Ed.2d 26 (1991). *Gilmer* holds that regulatory claims, even when they further important public policy goals, are subject to arbitration. There is no question that the state's claims may be arbitrated. However, as *Gilmer* notes, arbitration may only be compelled if both parties have agreed to arbitrate the claim. *Id.* at 35, 111 S.Ct. at 1657 ("since the employees there had not agreed to arbitrate their statutory claims ... the arbitration in those cases understandably was held not to preclude subsequent statutory actions."). Gilmer involved an individual who was a party to a contract, not a state agency that never agreed to resolve its enforcement action by arbitration.

The Individual Defendants contend that the state should be compelled to arbitrate representative consumer protection claims as the Court ordered in *Gray v. Conseco,* No. SA CV 00–322DOC (EEX), 2000 WL 1480273, \*7 (C.D.Cal. Sept. 29, 2000). These matters, however, are not "representative" actions brought on behalf of defrauded borrowers, but are instead instituted under the regulatory and police power to enforce state and federal consumer protection laws. *See FTC v. First Alliance Mortgage. Co. (In Re First Alliance Mortgage. Co.),* 264 B.R. 634, 650 (C.D.Cal.2001). Because the state is not a party to the arbitration agreement, and is seeking to enforce its regulatory scheme rather than representing defrauded borrowers, it is not bound by the arbitration agreement.

Accordingly, the Individual Defendants' motion to compel arbitration is DENIED.

## V.

### CONCLUSION

For the reasons set forth above, the Individual Defendants' Motion to Dismiss Count II against them is GRANTED, and the motion to compel arbitration is DENIED.

IT IS SO ORDERED.