**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CITY OF ARCADIA; CITY OF
BALDWIN PARK; CITY OF
BELLFLOWER; CITY OF CERRITOS;
CITY OF COMMERCE; CITY OF
DIAMOND BAR; CITY OF DOWNEY;
CITY OF IRWINDALE; CITY OF
LAWNDALE; CITY OF MONROVIA;
CITY OF MONTEBELLO; CITY OF
MONTEREY PARK; CITY OF PICO
RIVERA; CITY OF ROSEMEAD;
CITY OF SAN GABRIEL; CITY OF
SANTE FE SPRINGS; CITY OF SIERRA
MADRE; CITY OF SIGNAL HILL;
CITY OF SOUTH PASADENA; CITY OF     No. 03-16309
VERNON; CITY OF WEST COVINA;        D.C. No.
CITY OF WHITTIER, a California       CV-02-05244-SBA
Municipal Corporation,
                *Plaintiffs-Appellants,*      OPINION

                        v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; CHRISTINE
TODD WHITMAN, USEPA
Administrator; WAYNE NASTRI,
USEPA Region IX Administrator,
                *Defendants-Appellees,*

NATURAL RESOURCES DEFENSE
COUNCIL, INC.; HEAL THE BAY, INC.;
SANTA MONICA BAYKEEPER, INC.,
                *Defendants-Intervenors-*
                            *Appellees.*

7169

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted
February 10, 2005—Pasadena, California

Filed June 15, 2005

Before: Harry Pregerson, William C. Canby, Jr., and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Canby

**COUNSEL**

Richard Montevideo, Terence J. Gallagher, Rutan & Tucker, LLP, Costa Mesa, California, for the plaintiffs-appellants.

John A. Bryson, Department of Justice, Washington, D.C., for the defendants-appellees.

David S. Beckman, Natural Resources Defense Council, Inc., Santa Monica, California, for the defendants-intervenors-appellees.

**OPINION**

CANBY, Circuit Judge:

Several municipalities in the Los Angeles area ("Cities") challenge administrative actions taken by the Environmental

Protection Agency ("EPA") pursuant to section 303(d) of the Clean Water Act, 33 U.S.C. § 1313(d). The EPA established a total maximum daily load ("TMDL") that limited the amount of trash that can be discharged into the Los Angeles River. The EPA subsequently approved the State of California's separately established TMDL, which was deemed to supersede the federal standard. The Cities challenge the EPA's authority to approve the State TMDL.[1] The district court dismissed this claim pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. We affirm because we conclude that the Clean Water Act permits the EPA's action.

## I. *Regulatory Background*

In an effort "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters," Congress enacted the Clean Water Act with the stated "goal that the discharge of pollutants into the navigable waters be eliminated by 1985." 33 U.S.C. § 1251(a), (a)(1).

The Clean Water Act offers two approaches for controlling water pollution: technology-based regulations and water quality standards. Technology-based regulations reduce levels of pollution by requiring a discharger to make equipment or process changes, without reference to the effect on the receiving water. Water quality standards set the permissible level of pollution in a specific body of water without direct regulation of the individual sources of pollution.

The National Pollutant Discharge Elimination System ("NPDES") permit program governs implementation of both technology-based requirements and water quality standards. 33 U.S.C. §§ 1311(b)(1)(C), 1342(a)(1); 40 C.F.R. § 122.44(a), (d)(1). An NPDES permit sets specific limits that

---

[1]We address the other issues raised on appeal in a separate, unpublished disposition filed contemporaneously with this opinion.

apply to individual polluters. Discharges from any "point source" into the waters of the United States are prohibited unless that discharge complies with the limits and requirements of the NPDES permit. 33 U.S.C. §§ 1311(a), 1362(12), (14).

States are required to identify waters where technology-based effluent limitations and other required controls fail to achieve water quality standards. 33 U.S.C. § 1313(d); 40 C.F.R. § 130.7(b). This list of substandard waters is known as the "303(d) list" (section 303 of the Clean Water Act having been codified as section 1313). States are required to develop a TMDL for each pollutant of concern. A TMDL is not self-enforcing, but serves as an informational tool or goal for the establishment of further pollution controls. *See Pronsolino v. Nastri*, 291 F.3d 1123, 1128-29 (9th Cir. 2002).

The EPA is required to approve or disapprove a State's TMDL within thirty days of its submission. 33 U.S.C. § 1313(d)(2). If the EPA disapproves a State TMDL submission, the EPA must issue its own within thirty days of the disapproval. *Id.* The EPA is also under a mandatory duty to establish a TMDL when a State fails over a long period of time to submit a TMDL; this "prolonged" failure can amount to the "constructive submission" of an inadequate TMDL, thus triggering the EPA's duty to issue its own. *See San Francisco BayKeeper v. Whitman*, 297 F.3d 877, 880-84 (9th Cir. 2002).

## II. Procedural History

In 1997, several environmental groups (including Heal the Bay and Santa Monica BayKeeper) sued the EPA for failure to satisfy its mandatory duty to establish a TMDL for the Los Angeles region when California failed to do so. This litigation resulted in the entry of a consent decree, which required the establishment of TMDLs to account for all significant sources of water pollution, including storm water and urban runoff.

The consent decree required EPA either to approve a State-submitted TMDL for trash in the Los Angeles River watershed by March 2001 or, if California failed to make a timely submission, to establish the EPA's own TMDL by March 2002.

California failed to submit a TMDL by March 2001, and the EPA subsequently established its own trash TMDL for the Los Angeles River in March 2002. Five months later, California submitted a trash TMDL, and the EPA subsequently approved it, causing it to supersede the EPA's TMDL. It is this approval of California's superseding TMDL that the Cities now challenge.[2]

The Cities brought this action in the United States District Court for the Northern District of California. The Cities claimed that the EPA lacked authority to approve the State TMDL after having established its own TMDL. The district court dismissed this challenge pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## III. Discussion

[1] We conclude that the EPA acted within the scope of its statutory and regulatory authority in approving the State TMDL.[3] Neither the Clean Water Act nor its implementing regulations specify or imply that the EPA is barred from approving a State submitted TMDL after the EPA has established its own. *See* 33 U.S.C. § 1313(d); 40 C.F.R. § 130.7. In fact, the States are authorized to submit waters identified and

---

[2]The Cities originally challenged the EPA's TMDL, but that challenge was withdrawn as moot when it was made clear that California's TMDL superseded and nullified EPA's earlier TMDL.

[3]We review de novo a dismissal for failure to state a claim pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure. *Decker v. Advantage Fund, Ltd.*, 362 F.3d 593, 595-96 (9th Cir. 2004). Dismissal is proper when there is a "lack of a cognizable legal theory" to support a claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

TMDLs "from time to time" and the EPA is *required* either to approve or disapprove a TMDL upon submission by a State. 33 U.S.C. § 1313(d)(2) ("The Administrator shall either approve or disapprove such identification and load not later than thirty days after the date of submission.").

**[2]** This plain reading of section 1313 is consistent with the basic goals and policies that underlie the Clean Water Act— namely, that States remain at the front line in combating pollution. *See* 33 U.S.C. § 1251(b) ("It is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution . . . ."); 33 U.S.C. § 1370 (stating that "nothing in this chapter shall [ ] preclude or deny the right of any State or political subdivision thereof . . . to adopt or enforce [ ] any standard or limitation respecting discharges of pollutants" unless the standard is less stringent than an existing standard). Even if the language of the statute were not clear, we would uphold as reasonable the EPA's interpretation of the Clean Water Act to require approval or disapproval of California's TMDL. *See Dioxin/Organochlorine Ctr. v. Clarke*, 57 F.3d 1517, 1525 (9th Cir. 1995) ("A court should accept the 'reasonable' interpretation of a statute chosen by an administrative agency except when it is clearly contrary to the intent of Congress.") (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-44 (1984)).

The Cities' reliance on the "constructive submission" doctrine is misplaced. It is certainly correct that a State's failure to act may trigger the EPA's duty to establish a TMDL on its own accord. Nothing in the constructive submission cases, however, suggests that the establishment of a TMDL by the EPA divests a State of the ability subsequently to submit a TMDL on the same subject. *See San Francisco BayKeeper*, 297 F.3d at 881-83 (discussing the constructive submission doctrine). Nor does anything in section 1313 suggest that the EPA is powerless to approve such a submission. *See* 33 U.S.C. § 1313.

**[3]** The Cities also argue that the duplicative TMDL process violates public policy. There is no legal support for this argument. The potential for action on both the state and federal level inheres in the structure of the statutory scheme. So long as the State does not attempt to adopt more lenient pollution control measures than those already in place under the Act, the Clean Water Act does not prohibit state action. *See* 33 U.S.C. § 1370.

## IV.   *Conclusion*

The EPA acted within its authority in approving California's TMDL despite EPA's earlier promulgation of its own TMDL when California originally failed to make a timely submission. We therefore reject the Cities' challenge to this EPA action. By contemporaneous memorandum disposition, we have rejected the Cities' other claims against the EPA. We therefore affirm the judgment of the district court dismissing the Cities' action.

**AFFIRMED.**