**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HENRY J. WEILAND,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>AMERICAN AIRLINES, INC.,<br>*Defendant-Appellee*. | No. 11-56088<br><br>D.C. No.<br>8:10-cv-01451-<br>JVS-SS<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted
February 2, 2015—Pasadena, California

Filed March 2, 2015

Before: Stephen Reinhardt and Ronald M. Gould, Circuit
Judges, and J. Frederick Motz, Senior District Judge.

Opinion by Judge Motz;
Dissent by Judge Reinhardt

# SUMMARY[*]

### Federal Aviation Administration

The panel affirmed the district court's dismissal of airline pilot Henry Weiland's action against American Airlines, holding that Weiland, who turned 60 six days before the Federal Aviation Administration's Age 60 Rule was abrogated by the Fair Treatment for Experienced Pilots Act ("FTEPA"), did not qualify for one of the Act's exceptions to non-retroactivity.

The FAA's Age 60 Rule required air carriers operating under 14 C.F.R. § 121(a) to cease scheduling pilots from operating aircraft when they turned 60. The FTEPA abrogated the Age 60 Rule, delaying the age at which pilots must cease flying from 60 to 65, and was explicitly non-retroactive with two exceptions.

The panel held that Weiland did not qualify for the FTEPA's 49 U.S.C. § 44729(e)(1)(A)'s exception because although he was employed by an air carrier, he was not employed "in such operations" and was not a "required flight deck member." The panel concluded that because Weiland did not qualify for an exception to the FTEPA's non-retroactivity, its abrogation of the Age 60 Rule was inapplicable to Weiland; and American acted "in conformance" with both the Age 60 Rule and the FTEPA when each was in effect, thereby immunizing American from any civil liability.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Judge Reinhardt dissented because he would hold that Weiland qualified for the exception in § 44729(e)(1)(A).

## COUNSEL

John S. Lopatto III (argued), Law Offices, Washington, D.C.; Richard A. Voll, Law Offices, Ridgewood, New Jersey, for Plaintiff-Appellant.

Robert Jon Hendricks (argued) and Larry M. Lawrence, Morgan, Lewis & Bockius, Los Angeles, California; Donald L. Havermann, and David R. Broderdorf, Morgan, Lewis & Bockius, Washington, D.C., for Defendant-Appellee.

## OPINION

MOTZ, Senior District Judge:

This case involves a difficult question of statutory construction that may currently apply only to a class of one. Although somewhat uncomfortable with the conclusion we reach, we hold that Plaintiff Henry Weiland, who turned 60 six days before the FAA's Age 60 Rule was abrogated by the Fair Treatment for Experienced Pilots Act ("FTEPA"), does not qualify for one of the FTEPA's exceptions to non-retroactivity. The district court reached the same result, and its decision is affirmed.

I.

Until December 13, 2007, airline pilots at air carriers operating under 14 C.F.R. § 121(a) ("Part 121 air carriers")

were subject to the FAA's Age 60 Rule. *See* 14 C.F.R. § 121.383(c) (2007). That rule required Part 121 air carriers to cease scheduling pilots from operating aircraft when they turned 60. On December 13, 2007 the FTEPA was enacted and abrogated the Age 60 Rule, delaying the age at which pilots must cease flying from 60 to 65. *See* 49 U.S.C. §§ 44729(a), (d). The FTEPA is explicitly non-retroactive, excluding any "person who has attained 60 years of age before the date of enactment of this section" from serving "as a pilot for an air carrier engaged in covered operations" unless the "person" qualifies for one of two exceptions. Only the first exception is at issue in this appeal; it reads:

> (A) such person is in the employment of that air carrier in such operations on such date of enactment as a required flight deck crew member;

*Id.* § 44729(e)(1)(A). The FTEPA also contains a "protection for compliance" provision that immunizes Part 121 air carriers from liability for actions taken in conformance with the FTEPA or the prior Age 60 Rule. *Id.* § 44729(e)(2).

Weiland was a check airman when he turned 60 on December 7, 2007. American's Collective Bargaining Agreement ("CBA") defined a check airman "as a pilot who is on Check Airman salary for the month." As pleaded in his complaint, Weiland's duties as a joint check airman/pilot included evaluating pilots in land-based simulators and in the air during cockpit "line checks," and piloting aircraft.

The Age 60 Rule was in effect on December 7 when Weiland turned 60 and American ceased scheduling him

for active duty.  Weiland requested to be reinstated in lieu of the FTEPA, and received a response from American on December 24, 2007.  American explained that it interpreted § 44729 (e)(1)(A) to not apply to Weiland, and accordingly he would remain "inactive" and be retired on his "Normal Retirement Date" pursuant to the Retirement Plan— January 1, 2008.  Weiland filed a charge of discrimination with the California Department of Fair Employment and Housing ("DFEH") on December 23, 2008, and filed a complaint in the U.S. District Court for the Central District of California on September 27, 2010.  The district court below granted American's motion to dismiss on February 18, 2011, which Weiland timely appealed.  We have jurisdiction under 28 U.S.C. § 1291.

## II.

We review *de novo* the district court's granting of a motion to dismiss for failure to state a claim.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  "We accept as true all well pleaded facts in the complaint and construe them in the light most favorable to the nonmoving party."  *Zadrozny v. Bank of New York Mellon*, 720 F.3d 1163, 1167 (9th Cir. 2013) (internal citation omitted).

## III.

Weiland's claims for relief depend on qualifying for the (e)(1)(A) exception to the FTEPA's non-retroactivity clause.[1]  The exception can be divided into three elements: (1) "in the employment of that air carrier," (2) "in such

---

[1] Weiland did not seek to qualify for the (e)(1)(B) exception, which applies to pilots who are "newly hired" and forgo their accrued seniority.

operations," and (3) "as a required flight deck crew member." These terms are undefined in the statute, and there is no legislative history shedding light on their meaning. We therefore must interpret the statutory language in a vacuum. We find that while Weiland was employed by American, he was not employed "in such operations" and was not a "required flight deck crew member."

Weiland's complaint does plausibly plead that he was "in the employment of" American on December 13. Although undefined by the FTEPA, the plain meaning of "employment" is commonly understood as receiving compensation in return for work. Here, Weiland was employed by American on December 13 as an inactive check airman/pilot. American did not terminate Weiland's employment on December 7; it only ceased scheduling him for check airman and pilot duties pursuant to the FAA's Age 60 Rule then in effect. His retirement date was not until January 1, 2008 pursuant to American's policy. The record is unclear when Weiland received his final paycheck, but we note that the California Unemployment Insurance Appeals Board found Weiland's "end of employment date" was after December 24, 2007 for purposes of calculating his unemployment insurance. That finding provides further support for concluding that Weiland was employed by American on December 13. Moreover, presumably he continued to be eligible for employee benefits provided by American.

Section 44729(e)(1)(A) does not simply say, however, that a person must be "in the employment" of an air carrier on the date of the enactment of the FTEPA in order to qualify for the exception to non-retroactivity. It says that the person must be "in the employment of that air carrier *in*

*such operations*." (emphasis added). "Such operations" refers back to the language "covered operations" used in § 44729(e)(1), and "covered operations," in turn, is defined in § 44729(b) as "operations under part 121 of title 14, Code of Federal Regulations." Weiland could not have been lawfully engaged in any such operations on December 13, 2007—the effective date of the FTEPA—because he was ineligible to do so under the FAA's Age 60 Rule when he turned 60 on December 7. On December 13, 2007, he was employed by American as an inactive check airman.

Likewise, it cannot be said that Weiland was "a required flight deck crew member" on December 13, 2007. As a pilot and check crew airman, he certainly fell in the class of "required flight deck crew member." *See Emory v. United Air Lines, Inc.*, 720 F.3d 915, 926 n.17 (D.C. Cir. 2013) ("Pity the passengers on a plane with an 'optional' pilot."). But, by virtue of the FAA's Age 60 Rule in effect when he turned 60 on December 7, 2007, Weiland also fell within a subclass that was excluded from the general class of "required flight deck crew member." Not only was he not a "*required* flight deck crew member," he was, as of December 7, 2007, *prohibited* from being a "flight deck crew member." That was the holding of the district court, and albeit reluctantly, we believe the district court was correct.[2]

---

[2] It is fair to ask to whom Section 44729(e)(1)(A) applies, if our interpretation is correct. There are two answers. First, the section would appear to apply to pilots who turned 60 on December 13, 2007. Second, under at least one collective bargaining agreement, check airmen who did not have to be active pilots were "required flight deck crew members." *See Brooks v. Air Line Pilots Ass'n, Intern.*, 630 F. Supp. 2d 52, 54 (D.D.C. 2009) (upholding Continental's decision to allow its check airmen who did not fly aircraft to qualify under § 44729(e)(1)(A)).

IV.

Because Weiland did not qualify for an exception to the FTEPA's non-retroactivity, its abrogation of the FAA's Age 60 Rule is inapplicable to Weiland, who turned 60 on December 7, 2007. American acted "in conformance" with both the Age 60 Rule and the FTEPA when each was in effect, thereby immunizing American from any civil liability. *See* 49 U.S.C. § 44729(e)(2) (the FTEPA's "protection for compliance" provision). Accordingly, Weiland cannot recover on his claims under California's FEHA.[3]

**AFFIRMED.**

---

REINHARDT, Circuit Judge, dissenting:

"No person who has attained 60 years of age before the date of enactment of this section may serve as a pilot for an air carrier engaged in covered operations unless . . . such person is in the employment of that air carrier in such operations on such date of enactment as a required flight deck crew member." 49 U.S.C. § 44729(e)(1)(A).

Statutory construction is frequently not easy. For that reason I set forth the sentence we are construing at the top of this dissent. In this case, however, a plain reading of the statutory language would seem to provide a clear answer to the question before us. Henry Weiland was "in the employment" of American Airlines on December 13, 2007.

---

[3] Because we hold that Weiland did not qualify for the (e)(1)(A) exception, we need not address the final issue on appeal of whether his charge to the California DFEH on December 23, 2008 was timely filed.

American Airlines was at the time engaged in part 121 operations, so that it was "in such operations" for purposes of § 44729(e)(1)(A). Weiland was a pilot and check airman, and a pilot, as the majority acknowledges, certainly is a "required flight deck crew member." Weiland was thus "in the employment of [an air carrier engaged in covered operations] on such date of enactment as a required flight deck crew member." He needs no more to prevail.

The majority argues that Weiland could not have been employed "in such operations" because he "could not have been lawfully engaged in any such operations on December 13, 2007." The phrase "in such operations" in § 44729(e)(1)(A), however, modifies "air carrier," not "person." By "such operations" Congress referred to "covered operations," which are in turn defined as "operations under part 121." *See* 49 U.S.C. § 44729(b), (e)(1). Part 121 operations are the "operations of each person who holds or is required to hold an Air Carrier Certificate or Operating Certificate under part 119." 14 C.F.R. § 121.1(a). Air Carrier Certificates or Operating Certificates are held by airlines, not by the individual pilots employed by airlines. It is thus American Airlines, not Weiland, who holds an "Air Carrier Certificate," and it follows that the only entity that may properly be said to engage in "part 121 operations" is American Airlines, not Weiland. This common sense conclusion is reinforced by part 119, which defines by reference the scope of part 121 operations, and which "applies to each person operating or intending to operate civil aircraft . . . [a]s an air carrier or commercial operator, or both, in air commerce." 14 C.F.R. § 119.1(a)(1). A pilot employed by an airline does not himself "operate civil aircraft as an air carrier or commercial operator." The airline does. In sum, the statutory and regulatory scheme make it clear that the

phrase "in such operations" in § 44729(e)(1)(A) qualifies "air carrier" and not "person" (the airline's individual pilot).

Even were we to assume that "in such operations" refers to Weiland, however, that section does not say that in order to qualify for the exception a person must be actually "engaged," or even "able to lawfully engage," in covered operations on the date of enactment. It only says that such person must be "in the employment of" the airline in covered operations on that date, and all parties agree that Weiland was in the employment of American Airlines on the relevant date. Aside from the Rule of 60, there are many reasons why an otherwise qualified pilot in the employment of an airline may not be able to lawfully operate a commercial aircraft on a given day. For example, he may have flown on a number of days or hours the preceding day or days that required him to be off duty on the day in question. *See* 14 C.F.R. §§ 117.5, 117.23, 117.25; *see also id.* § 91.17(a)(2) (intoxication); *id.* § 91.17(a)(3) (use of certain drugs). Thus, under the majority's logic, someone who would otherwise qualify for the exception but who happened to be on his "required rest period" on December 13, 2007 would not qualify because, as the majority says, he "could not have been lawfully engaged in any such operations on December 13, 2007." *See* 14 C.F.R. § 117.25(a) ("No certificate holder may assign and no flightcrew member may accept assignment to any . . . duty with the certificate holder during any required rest period."). Similarly, otherwise qualifying pilots taking certain prescription drugs, or who consumed alcohol on December 13, 2007, would not qualify for the exception. *See id.* § 91.17(a)(2) ("No person may act . . . as a crewmember of a civil aircraft . . . [w]hile under the influence of alcohol."); *id.* § 91.17(a)(3) ("No person may

act . . . as a crewmember of a civil aircraft . . . [w]hile using any drug that affects the person's faculties in any way contrary to safety.").

The majority also argues that Weiland was not a "required flight deck crew member" because far from being "required" he was in fact "prohibited from being a 'flight deck crew member.'" The question, however, is not whether Weiland was himself individually required, but whether "pilots," as a category, are "required." In fact, under the majority's logic no one in a major airline would probably qualify because it can hardly be said that any individual pilot is truly "required." Except in exceptional circumstances, there will likely be a replacement reasonably available. Furthermore, as with the majority's first argument, it follows from the majority's reasoning that someone who was disqualified from lawfully operating a commercial aircraft on December 13, 2007 for any of the multiple reasons that I mentioned above would not be a "required flight deck crew member" and would not qualify for the exception in § 44729(e)(1)(A).

I doubt that is what Congress intended, and it is certainly not what it wrote in the statute. The exception it made for pilots who were 60 as of the date of enactment and employed by the air carrier on that date fits Weiland to a T. I respectfully dissent.